963 P.2d 334

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois company, Plaintiff, Counter-defendant, Appellee,**

v.

**Barbara ARRINGTON and Larry Arrington, wife and husband, Cynthia Arrington and John Doe Arrington, wife and husband, Defendants, Counter-claimants, Appellants.**

No. 1 CA–CV 97–0448.

Court of Appeals of Arizona, Division 1, Department B.

May 26, 1998.

Review Denied Sept. 24, 1998.

O'Connor, Cavanagh, Anderson, Killingsworth & Beshears, P.A. by Ralph E. Hunsaker and Christopher Robbins, Phoenix, for Plaintiff, Counter–defendant, Appellee.

Dillingham Cross, P.L.C. by John L. Dillingham, Phoenix, for Defendants, Counter–claimants, Appellants.

## OPINION

EHRLICH, Presiding Judge.

¶ 1   Although the Arringtons were fully compensated from the underinsured motorist ("UIM") coverages of their policies with State Farm Mutual Automobile Insurance Company for their damages suffered in a vehicle accident, they sought further payments under the UIM coverages of other policies they held with the same insurance company.  The trial court ruled that they were not entitled to duplicative recovery. We affirm.

*FACTS* [1] *AND PROCEDURAL HISTORY*

¶ 2   Larry Arrington, his wife Barbara and their daughter Cynthia were involved in an automobile accident caused by Alberto Contreras. Larry was driving Cynthia's car, a 1989 Honda, at the time of the accident.

¶ 3   Contreras' insurer paid his liability policy limits to the Arringtons. While Barbara was fully redressed, Larry and Cynthia were not completely compensated for their injuries.

¶ 4   At the time of the accident, Cynthia was the named insured under a policy on the Honda issued by State Farm. The policy provided UIM coverage with liability limits of $25,000 per person and $50,000 per accident.

¶ 5   Larry and Barbara had separate State Farm policies on four vehicles they owned: two Chevrolets, a Jeep and a Buick. Because Cynthia resided with her parents, she was also an insured within the UIM coverage on each of those four policies. Each of the policies had UIM coverage limits of $25,000 per person and $50,000 per accident, and each contained the following clause:

**Limits of Liability—Coverage W [UIM Coverage]**

* * *

5.   The most we pay will be the lesser of:
a.   the difference between the amount of the *insured's* damages for *bodily injury,* and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury;* or
b.   the limits of liability of this coverage.
(Emphasis original.)

¶ 6   State Farm offered $12,000 to settle Larry's UIM claim and $15,000 to settle Cynthia's UIM claim. The Arringtons accepted on the condition that Larry's claim be paid under the policy on the Honda and that Cynthia's claim be paid under the policy on

the Buick. State Farm paid Larry under the Honda policy, but it issued Cynthia a draft for $13,000 on the Honda policy and a draft for $2000 on the Buick policy. Larry and Barbara signed a release of Larry's UIM claim under the Honda policy, but Cynthia returned the drafts payable to her.

¶ 7   Larry and Cynthia took the position that Larry was entitled to $12,000 and Cynthia to $15,000 in UIM benefits from each of the five State Farm policies. State Farm disagreed, and it filed an action for declaratory relief, seeking an order that it had no obligation to pay Larry and Cynthia more than the difference between the amount of their damages for bodily injury and the amount paid to them by Contreras' insurer. Larry and Cynthia counterclaimed for bad faith and for a declaratory judgment that they were entitled to UIM payments under each of the five policies.

¶ 8   Both sides moved for summary judgment. State Farm argued that its policies' UIM provisions stated that the insureds can recover UIM damages only to the extent that they remain uncompensated for their actual damages. It also asserted that, pursuant to ARIZ.REV.STAT. ANN. ("A.R.S.") section 20–259.01, UIM coverage is applicable only for the difference between an insured's total damages and the total applicable liability limits.

¶ 9   Larry and Cynthia argued that nothing in the express language of the policies excluded them from obtaining UIM recovery from each policy for which a premium was paid. Reasoning that they were entitled to recover under each policy unless the policy contained limiting language precluding recovery, they claimed that, in light of State Farm's admission that its policy did not contain an express provision limiting UIM coverage to a single policy, they were entitled to recover from each policy.

¶ 10   The trial court granted State Farm summary judgment. It ruled that "the lan-

---

1.   The statement of facts in the Arringtons' opening brief does not contain any citations to the record as required by ARIZ. R. CIV.APP. P. 13(a)(4); citations to appendices to the brief are not citations to the record. Accordingly, we disregard

the facts set forth in the opening brief. *See Bird v. State through Corbin,* 170 Ariz. 20, 20 n. 2, 821 P.2d 287, 287 n. 2 (App.1991). Instead, we rely on State Farm's statement of facts and our review of the record for our recitation of the facts.

guage of the UIM coverage itself—covering only the 'difference' between that which has been paid by a liable party and the damage amount—excludes payment of five times that 'difference.' " The court noted that the Arringtons' "benefit of the bargain" was the cumulative UIM limit which was five times the modest limit of any single policy that could be used if the amount of UIM recovery was more than the limit of any one policy. In fact, the court added, State Farm had tapped more than one policy to tender $15,000 to Cynthia. Damages were fixed at $12,000 for Larry and $15,000 for Cynthia, payable once only.

¶ 11 State Farm applied for an award of attorneys' fees under A.R.S. section 12–341.01(A)(1992), seeking $4159.50. The trial court entered judgment in favor of State Farm, allowing it $2000 in fees. The Arringtons then appealed from the judgment.

## DISCUSSION

### A. Amount of UIM Recovery Allowed

¶ 12 The Arringtons contend that, under paragraph 5(a) of the UIM coverage provisions in their five policies, Larry and Cynthia. are entitled to $12,000 and $15,000, respectively, under each policy because the policy contains no language limiting recovery. In their opinion, each policy is an independent contract for insurance for which they paid a separate premium, and, thus, they are permitted the benefit of their bargain under each contract. Alternatively, they maintain that Larry is at least entitled to recover under one of his policies as well as the policy on the Honda, and Cynthia is entitled to recover under the Honda policy and at least one of her parents' policies.

¶ 13 State Farm responds that public policy and the terms of the insurance policies dictate that the Arringtons cannot recover UIM benefits in excess of their actual damages. It argues that the Arringtons' UIM coverage claims should be allowed only to the

extent that the Arringtons would have been able to collect damages from Contreras had he been insured under a policy with liability limits sufficient to fully compensate them. State Farm construes paragraph 5(a) to mean that, once Larry and Cynthia recovered from their UIM coverages the difference between their damages for bodily injury and Contreras' liability limits, the remaining "difference" to be compensated from their other policies was zero; therefore, they were not entitled to additional compensation from their other policies.

¶ 14 The interpretation of an insurance contract, including determining whether its terms are ambiguous or uncertain, is a question of law for the court to decide. *Thomas v. Liberty Mut. Ins. Co.*, 173 Ariz. 322, 324, 842 P.2d 1335, 1337 (App.1992). "[W]e construe a clause subject to different interpretations by examining the language of the clause, public policy considerations, and the purpose of the transaction as a whole." *State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 257, 782 P.2d 727, 733 (1989).

¶ 15 As a preliminary issue, this appeal does not present a "stacking" question. "Stacking" describes a situation in which "all available policies are added together to create a larger pool from which the injured party may draw in order to compensate him for his actual loss where a single policy is not sufficient to make him whole." 12A G. COUCH, CYCLOPEDIA OF INSURANCE LAW (hereafter "COUCH") § 45:628, at 77 (2d ed.1981). *See also id.* at § 45:651, p. 207 (stacking occurs when a claimant adds all available policies together to create a greater pool to satisfy his actual damages). Indeed, State Farm "stacked" two policies to fully compensate Cynthia for her actual damages.[2] The question, instead, is whether the Arringtons may recover duplicate damages from additional policies after they have received payment for the full amounts of their damages.

---

**2.** While the State Farm policies issued to the Arringtons contain an "other vehicle exclusion" that purports to preclude stacking, in *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 897 P.2d 631 (1995), the supreme court held that a provision identical to the one in the Arringtons' policies did not bar the insureds from stacking UIM coverages under multiple policies purchased from State Farm because the wording of the exclusion failed to comply with A.R.S. section 20–259.01(F)(now (H)).

¶ 16 As said above, the State Farm policies issued to the Arringtons provide in paragraph 5(a) that, for UIM coverage, the most that State Farm will pay will be the lesser of "the difference between the amount of the insured's damages for bodily injury, and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury" or the liability limits of the coverage. The Arringtons read this provision in isolation in each policy so that the "difference" is separately calculated for each policy as the amount of their damages less the amount paid by Contreras' insurer. State Farm interprets the provision in each policy as taking into account both the amounts paid under Contreras' policy and under the Arringtons' policies to determine whether a difference remains to be paid under another Arrington policy.

¶ 17 The language of this clause read with another provision of the policy supports State Farm's interpretation. *See Nichols v. State Farm Fire & Cas. Co.*, 175 Ariz. 354, 356, 857 P.2d 406, 408 (App.1993)(each part of an insurance contract "must be read and interpreted in connection with all other parts" to give reasonable and harmonious meaning and effect to all provisions). In the section "Underinsured Motor Vehicle—Coverage W," the policy states: "We will pay damages for ***bodily injury*** an ***insured*** is legally entitled to collect from the owner or driver of an ***underinsured motor vehicle.***" (Emphasis original.) This statement is consistent with the purpose of UIM coverage, which is to place the victim's insurer " 'in the shoes of the tortfeasor as a source of payment to the victim.' " *Spain v. Valley Forge Ins. Co.*, 152 Ariz. 189, 191–92, 731 P.2d 84, 86–87 (1986)(quoting 12A COUCH § 45:652, at 212 (2d ed.1981)(addressing uninsured-mo-

torist ("UM") coverage)); *Wilson*, 162 Ariz. at 254, 782 P.2d at 730 (UIM coverage based on same public policy as UM coverage).

¶ 18 Thus, when the injured person's insurer pays under UIM coverage, the insurer steps into the place of the tortfeasor for the purpose of paying the damages of the injured party. As such, under paragraph 5(a) of the State Farm policy, "the amount paid to the insured by or for any person ... who is or may be held legally liable for the bodily injury" includes the UIM amount paid by State Farm because it paid damages on behalf of Contreras, the person who was legally liable for the Arringtons' bodily injuries. In other words, State Farm paid the damages for which Contreras was legally liable because his policy was inadequate to cover all of the damages and the Arringtons had UIM coverage to shift the burden of that payment to their own insurer. Thus, once State Farm fully paid the difference between its insureds' damages for bodily injury and what Contreras' insurer had paid, there was no longer a "difference" between those amounts for which Larry and Cynthia could be compensated under other policies.

¶ 19 The language of the policy supports State Farm. Next we examine whether public policy considerations brace its interpretation. "When faced with conflicting, reasonable interpretations of a contract, the court should adopt the interpretation that furthers public policy." *Wilson*, 162 Ariz. at 255, 782 P.2d at 731.

¶ 20 The statutory UIM provisions found in A.R.S. section 20–259.01 [3] reflect Arizona's public policy that victims of negligent, inadequately-insured drivers are entitled to protect themselves by recovering their damages from their own UIM carriers. *See Wilson*, 162 Ariz. at 253–54, 782 P.2d at 729–30. But

---

**3.** The current version of A.R.S. section 20–259.01 provides in relevant part:

  B. ... At the request of the insured the insured may purchase and the insurer shall then include within the policy underinsured motorist coverage which extends to and covers all persons insured under the policy in any amount authorized by the insured up to the liability limits for bodily injury or death contained within the policy.
  * * *

  G. "Underinsured motorist coverage" includes coverage for a person if the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accident is less than the total damages for bodily injury or death resulting from the accident. To the extent that the total damages exceed the total applicable liability limits, the underinsured motorist coverage provided in subsection B of this section is applicable to the difference.

UIM coverage may be tapped only to the extent of actual legal damages. For example, in holding that a non-duplication of medical benefits endorsement was enforceable, the court in *Schultz v. Farmers Ins. Group of Companies,* 167 Ariz. 148, 151, 805 P.2d 381, 384 (1991), explained: "Public policy mandates only that an insured be fully compensated, when possible, for damages incurred. We do not believe the legislature sought to preclude insurers from contractually eliminating double recovery." Similarly, in *Spain,* the supreme court said that, if an insured has been fully compensated under liability coverage, those payments may be credited under UIM coverage to avoid a duplication of benefits. 152 Ariz. at 194 n. 5, 731 P.2d at 89 n. 5. And in *Geyer v. Reserve Ins. Co.,* 8 Ariz.App. 464, 467, 447 P.2d 556, 559 (1968), after holding that the insured was entitled to recover her damages under both liability and UIM coverages, the court cautioned: "Nothing we have stated in this opinion is to be construed as permitting or tending to permit a 'double recovery' or windfall to the insured under separate coverages in excess of her actual legal damages." *See also* 12A COUCH § 45:624, at 35 ("it is clear that regardless of the applicable limits, the injured insured may not recover more than his actual loss").

¶ 21 In the cases in which recovery has been permitted under multiple policies or under different coverages in the same policy, the injured party's damages exceeded the policy limits of any one policy or coverage. *E.g., State Farm Mut. Auto. Ins. Co. v. Lindsey,* 182 Ariz. 329, 330–31, 897 P.2d 631, 632–33 (1995)(allowing stacking of UIM coverages from multiple policies when the parties stipulated that the life of the decedent insured and the injuries of another insured had values well in excess of all available insurance coverage); *Croci v. Travelers Ins. Co.,* 163 Ariz. 346, 348, 788 P.2d 79, 81 (1990)(escape clause in UM policy provision unenforceable when the injured passenger's damages exceeded the combined UM coverage limits of the two applicable policies); *Brown v. State Farm Mut. Auto. Ins. Co.,* 163 Ariz. 323, 324, 329, 788 P.2d 56, 57, 62 (1989)(allowing recovery "to the extent [the] actual damages are not fully compensated"

when the parties stipulated that damages in the wrongful death claim exceeded the combined amounts of liability and UIM coverages of the applicable policies); *Rashid v. State Farm Mut. Auto. Ins. Co.,* 163 Ariz. 270, 271, 276, 787 P.2d 1066, 1067, 1072 (1990)(escape clause in UM policy provision unenforceable to reduce recovery below actual damages when injured passenger's damages exceeded the UM coverage limits of the applicable primary carrier); *State Farm Mut. Auto. Ins. Co. v. Bogart,* 149 Ariz. 145, 146–47, 153, 717 P.2d 449, 450–51, 457 (1986)(requiring prorated payments from two additional carriers when the amount of the judgment exceeded the primary coverage limit of the self-insured car rental agency). Thus, they provide no authority for the proposition the Arringtons advance. Instead, the consistent message is that UIM coverage is intended to compensate the injured party as fully as possible for the injuries sustained; it is not intended to provide double recovery or more or to provide the insured, injured party with a windfall.

¶ 22 The purpose of the transaction as a whole also supports State Farm's position. UIM coverage is a "gap filler," permitting "insureds to provide themselves with a source of compensation for bodily injuries sustained as a result of the negligence of [an] ... inadequately insured driver." *Wilson,* 162 Ariz. at 255, 782 P.2d at 731. The Arringtons' UIM coverage fulfilled this purpose; they all were able to recover full compensation for their damages from their UIM coverages.

¶ 23 The Arringtons complain, however, that they have not realized the benefit of their bargain because they paid premiums for five separate policies, each with UIM coverage. We disagree. As the trial court noted, their benefit of the bargain is the cumulative UIM limit that is five times the limit of any single policy. Thus, when their damages are higher than the limits of one policy, the other policies can be tapped to make up the difference. That is the benefit of their bargain, and, in fact, because Cynthia's damages exceeded the limit of one policy, she was fully compensated by adding

a portion of the UIM coverage from another policy.

¶ 24   Finally, if Contreras had carried sufficient liability coverage to pay Larry and Cynthia for their damages, their recovery would have been limited to their actual damages. Because State Farm stepped into the place of Contreras, the Arringtons were entitled to collect from State Farm only what Contreras' insurer would have paid if he had carried adequate coverage, not five times that amount.

¶ 25   State Farm's payment of $12,000 to Larry and the tendered payment of $15,000 to Cynthia is all the Arringtons are entitled to recover under their policies. Our conclusion also rejects their argument that, at the least, Cynthia is entitled to recover under her own policy and one of her parents' policies, and Larry is qualified to recover under Cynthia's policy and one of his own.

### B.   Award of Attorneys' Fees to State Farm

¶ 26   In the trial court, State Farm, as the prevailing party in an action arising out of contract, sought attorneys' fees of $4159.50. A.R.S. § 12–341.01(A). The court awarded it $2000. The Arringtons argue on appeal that the court abused its discretion in making this award because the legal question presented is one of first impression and assessing fees against them will discourage other insureds from bringing meritorious claims.

¶ 27   The trial court has broad discretion in determining whether to award attorneys' fees under A.R.S. section 12–341.01(A). *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). If there is any reasonable basis for the decision, it will not be disturbed. *Id.* at 570–71, 694 P.2d at 1184–85, citing *Jones v.*

*Queen Ins. Co.*, 76 Ariz. 212, 214, 262 P.2d 250, 251 (1953).

¶ 28   The court in *Associated Indemnity* listed factors to be considered by the trial court in deciding whether to grant an award of fees. 143 Ariz. at 570, 694 P.2d at 1184. Among those factors are novelty of the legal question and whether an award would discourage other parties from bringing tenable claims. *Id.* Whether these two factors are favorable to the Arringtons is debatable, and, even if they militate in favor of the Arringtons, the court could have determined that, on balance, the other factors tipped the scales in favor of an award. In addition, the court awarded State Farm less than one-half of the amount it requested, thereby giving some break to the Arringtons. It did not abuse its discretion in granting $2000 in fees to State Farm.

### C.   Attorneys' Fees on Appeal

¶ 29   State Farm now requests an award of its attorneys' fees incurred on appeal. A.R.S. section 12–341.01(A). It is the prevailing party, and, in our discretion, we grant this request. State Farm may establish the amount of the award by complying with ARIZ. R. CIV.APP. P. 21(a).

### CONCLUSION

¶ 30   The judgment is affirmed.

TOCI, C.J., and GERBER, J., concur.