214 P.3d 415

**Farzam MALEKI, an individual, Plaintiff-Appellee,**

v.

**DESERT PALMS PROFESSIONAL PROPERTIES, L.L.C., Defendant-Appellant.**

**No. 1 CA–CV 08–0646.**

Court of Appeals of Arizona, Division 1, Department D.

July 28, 2009.

Kelhoffer Manolio & Firestone, PLC By Merrick B. Firestone, Veronica L. Manolio, Scottsdale, Attorneys for Appellant.

Holloway Odegard Forrest & Kelly, P.C. By Sally A. Odegard, Lindsay A. Edmondson, Charles M. Callahan, Phoenix, Attorneys for Appellee.

## OPINION

JOHNSEN, Judge.

¶ 1 The commercial lease at issue in this case allowed the tenant to renew if he was "in compliance" with the lease. Consistent with *Foundation Development Corp. v. Loehmann's, Inc.*, 163 Ariz. 438, 788 P.2d 1189 (1990), we hold that an immaterial breach of the lease did not deprive the tenant of the power to renew.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Dr. Farzam Maleki entered into a five-year commercial lease with Desert Palms Professional Properties, L.L.C. ("Desert Palms") on May 15, 2002. The lease stated the premises consisted of "approximately 1,500 square feet" and that "[t]he exact square footage shall be determined by Landlord's architect in accordance with [Building Owners and Managers Association] standards." Rent was $24 per rentable square foot per year, to increase by three percent annually. Maleki also was required to pay a pro-rata share of certain fees and taxes.

¶ 3 The lease required all payments be made "without deduction or offset, prior notice or demand." It further stated that all taxes and fees "shall be estimated in advance by [Desert Palms] and shall be paid in advance by [Maleki] on the first day of each month without further demand or any deduction or set off whatever." In the event Maleki failed to pay any amount due and did not cure within five days after written notice, the lease granted Desert Palms "[t]he right to declare the term of this Lease ended and to reenter the Premises and take possession thereof." The lease granted Desert Palms the same right, albeit with 30 days' notice, in the event Maleki defaulted on "any other term, covenant or conditions [sic] of this Lease."

¶ 4 The lease provided Maleki the right to renew for an additional five-year term "[s]o long as [Maleki] is in compliance with the terms hereof." It recited that to exercise the option, Maleki "shall notify" Desert Palms in writing "no earlier than nine (9) months and no later than six (6) months before the end of the preceding Lease term."

¶ 5 When tenant improvements were complete and the lease term was to begin, Desert Palms notified Maleki by letter dated October 14, 2002, that the "total Lease space" upon which rent, taxes and fees were to be calculated was 1,418 square feet. The letter also confirmed the commencement date of the lease was November 1, 2002. Although Desert Palms in the first half of 2003 sent two invoices calculating amounts due based on 1,418 square feet, on August 20, 2003, without explanation, it billed Maleki for fees calculated on 1,474 square feet. Maleki wrote Desert Palms noting the discrepancy and enclosed a check calculated on 1,418 square feet. He asked Desert Palms to "[p]lease let [him] know if this clears all your concerns," and Desert Palms did not respond. For more than three years thereafter, Desert Palms regularly invoiced Maleki based on 1,418 square feet, and Maleki paid amounts due.

¶ 6 In September or October 2006, Maleki received a telephone call from Dr. Albert Carlotti, one of Desert Palms' two principals. Carlotti said Desert Palms was "bursting at the seams" of its adjoining space and offered to permit Maleki to terminate the lease early. Maleki declined Carlotti's offer and told him that, to the contrary, he intended to exercise his option to renew for another five-year term. According to Maleki, Carlotti replied that he did not want Maleki to renew the lease.

¶ 7 A few weeks later, on November 6, 2006, Desert Palms sent Maleki a letter announcing that the rentable square footage of the lease space had been calculated mistakenly and that it was not 1,418 square feet but was 1,466 square feet. Desert Palms stated that because of the discrepancy, Maleki had paid too little in rent, fees and taxes for the entirety of the lease period. The letter demanded payment of $8,043.70 in back rent, fees and taxes within 30 days and asserted that a failure to pay "will be considered immediate breach of the terms [of] your

lease agreement and constitute grounds for legal action."[1]

¶8 After he received the letter, Maleki telephoned Carlotti, suggested that a third party measure the lease space and said he would agree to pay the amount demanded if measurement confirmed the 1,466 square feet figure. His lawyer reiterated the suggestion in a letter a few weeks later. Meanwhile, although Maleki understood the commencement date of the lease was November 1, 2002, rather than May 15, 2002, out of an abundance of caution so as not to miss the window within which to exercise the renewal option, he gave written notice of his intent to renew the lease on November 28, 2006.

¶9 When Desert Palms did not respond to the suggestion that a third party measure the premises, Maleki continued to make payments calculated on the 1,418 number. A meeting between the two sides was arranged for early March 2007, but Desert Palms canceled after Maleki wrote to reiterate his intent to renew. Through counsel, Desert Palms in a letter dated March 22 asserted Maleki could not renew the lease because he "failed to maintain compliance." The letter stated the lease would terminate on its own terms on June 1 and that Desert Palms would re-enter and take possession of the premises the following day. Moreover, unless Maleki paid back rent, taxes and fees of $10,993 by April 27, Desert Palms would terminate and re-enter "on or by" April 30.

¶10 In response to the March 22 letter, Maleki sent Desert Palms a check for $9,997.93. Maleki failed to specify the obligations the check was intended to represent, however, and Desert Palms refused to accept it. On April 6, Desert Palms sent another letter to Maleki, demanding payment of $14,617.47 (the amount demanded in the March 22 letter plus $3,630 for April rent and a 10% late fee). This letter threatened to terminate if "a full Rent payment is not tendered" by April 13. The letter reiterated that, regardless of whether Maleki paid April rent, Desert Palms would re-enter and take possession of the property if he did not pay

by April 30 the amount demanded in the March 22 letter.

¶11 Maleki's lawyer responded to Desert Palms by letter dated April 10. The letter explained the amounts represented by the $9,997.93 check that Desert Palms had rejected, re-urged hiring of a neutral to calculate the rentable square footage and stated that Maleki would pay the disputed amounts into escrow in the meantime. By letter dated April 13, Desert Palms finally accepted Maleki's April rent but warned it was "accept[ing] this partial payment *only* to alleviate a lock-out for [Maleki] today."

¶12 Maleki filed a civil complaint and an application for a temporary restraining order. The complaint sought a declaratory judgment and alleged breach of contract and breach of the implied covenant of good faith and fair dealing. It sought a temporary restraining order and attorney's fees pursuant to Arizona Revised Statutes ("A.R.S.") section 12–341.01 (2003).

¶13 Desert Palms filed an answer and counterclaim, alleging Maleki breached the contract and the covenant of good faith and fair dealing by failing to pay amounts due under the lease, "initiating this lawsuit to falsely prolong the Termination Date" of the lease, "professionally bad-mouthing Desert Palms' principals" and seeking a restraining order "under false pretenses." Desert Palms requested a preliminary injunction ordering Maleki to vacate the property as of June 1, 2007. Following a hearing, the court set a trial and ordered the parties to "maintain[ ] the status quo" in the meantime.

¶14 After a two-day trial, the superior court found that, with one "minor exception," which it attributed to Desert Palms, Maleki had timely paid rent, fees and taxes. It found that, although the actual rentable area of the leasehold was 1,466 square feet, because Desert Palms was responsible for the initial miscalculation, Maleki was entitled to rely on the 1,418 figure through the original term of the lease. Accordingly, the court found Maleki was "in compliance" with the

---

1. Desert Palms' letter stated, "We realize this is an inconvenience to you and therefore no interest or late fees will apply provided you pay these fees within 30 calendar days from the receipt of this letter."

lease at the time he exercised his right to renew.

¶ 15 The court also found Desert Palms' claims against Maleki were "contrived and improperly motivated by [its] unprojected need for additional space." Finally, it concluded Desert Palms had breached its duty of good faith and fair dealing by demanding immediate payment of back rent, fees and taxes after the miscalculation was discovered, by refusing Maleki's tender in April and by threatening to lock him out. The court held Maleki owed Desert Palms $13,912, but that as damages for Desert Palms' breach of the duty of good faith, Maleki would not be liable for prejudgment interest or penalties and was entitled to receive fees and costs. The court directed Maleki to file an application and affidavit for attorney's fees and costs and further ordered that Desert Palms would be entitled to a set-off of $13,912 against the fees award.

¶ 16 Maleki sought attorney's fees and costs in the amount of $194,246.29. Desert Palms objected and filed a motion to enforce the court's ruling, arguing Maleki continued to refuse to pay taxes and fees based on the 1,466 square feet figure. The court issued a minute entry in which it confirmed that an award of attorney's fees to Maleki was proper because Maleki was the successful party but found that "both parties participated in unnecessarily expanding the litigation." Accordingly, the court limited its award of attorney's fees and costs to Maleki to $105,872.21.

¶ 17 The court entered judgment awarding Maleki a total of $91,960.21, incorporating by reference its findings of fact and conclusions of law. Desert Palms timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B)(2003).

## DISCUSSION

¶ 18 On appeal, Desert Palms argues the superior court (1) erred in finding Maleki "in compliance" with the lease for purposes of the renewal provision even though he owed Desert Palms $13,912, (2) erred in finding Desert Palms acted in bad faith and (3) abused its discretion in awarding Maleki his attorney's fees. We will consider each argument in turn.

### A. Maleki's Compliance with the Lease.

#### 1. Standard of review.

¶ 19 Whether Maleki was sufficiently "in compliance" with the lease to exercise his option to renew is a mixed question of fact and law that we review *de novo*. *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 366, ¶ 10, 982 P.2d 1277, 1280 (1999).

#### 2. The superior court did not err in finding Maleki was in compliance with the lease for purposes of the renewal provision.

¶ 20 Desert Palms argues that because Arizona law requires option provisions to be construed strictly, Maleki could not exercise the option to renew unless he was in "strict" compliance with the lease. *See, e.g., Andrews v. Blake*, 205 Ariz. 236, 243, ¶ 24, 69 P.3d 7, 14 (2003) ("Generally, Arizona courts have strictly construed options in lease agreements because such provisions allow the optionee freedom to exercise or not exercise the option, whereas the optionor is bound by the option."); *Univ. Realty & Dev. Co. v. Omid–Gaf, Inc.*, 19 Ariz.App. 488, 490, 508 P.2d 747, 749 (1973) ("[T]here must be strict compliance with the terms of an option agreement. . . .").

¶ 21 The principle on which Desert Palms relies requires strict compliance with the manner in which an option is to be exercised. *See Andrews*, 205 Ariz. at 241–43, ¶¶ 14–22, 69 P.3d at 12–14 (considering whether notice of exercise of option was timely); *Univ. Realty*, 19 Ariz.App. at 490, 508 P.2d at 749 (considering whether there was "strict compliance in the mode specified by the parties"). In this case, there is no question Maleki strictly complied with the lease's requirement that he exercise the option by giving notice "in writing no earlier than nine (9) months and no later than six (6) months before the end of the preceding Lease term."

¶ 22 We have found no Arizona case addressing the meaning of a commercial lease requirement that a tenant be "in compliance" in order to exercise a renewal option. We

find helpful, however, the Ninth Circuit's decision in *Title Insurance & Guaranty Co. v. Hart*, 160 F.2d 961 (9th Cir.1947). That case concerned a lease that granted an option to renew, following written notice, "[i]n consideration of, and the faithful compliance thereto by said lessees of the foregoing agreement and covenants therein." *Id.* at 963. Appellants in that case "urge[d] that strict compliance with all covenants in the lease was a condition precedent to the granting of a new lease" and argued that even immaterial breaches by the lessees barred renewal. *Id.* at 970. The court held that "faithful compliance" was the requirement and upheld the district court's finding of "no deviation from faithful performance of the lease because of any grossly negligent, willful, or fraudulent breach of duty." *Id.* Significantly, the court noted that it was "not reasonable in human experience to expect that there could have been full, exact, strict, complete and perfect compliance with all of the covenants." *Id.*

¶ 23 Consistent with *Hart*, our supreme court in *Loehmann's* rejected the notion that a commercial leasehold may be forfeited by a tenant's immaterial breach. At issue in *Loehmann's* was a lease that expressly granted the landlord the right to terminate upon any failure by the tenant to pay rent "or other charges" within 10 days after notice of default. 163 Ariz. at 439, 788 P.2d at 1190. After the tenant failed to timely pay common-area charges, the landlord sought to terminate and take possession. *Id.* The landlord relied both on the language of the lease and on A.R.S. § 33–361(A) (2007), which confers on a landlord the right to re-enter and take possession whenever rent is in arrears for five days "or when a tenant violates any provision of the lease." Notwithstanding the lease language and the statute, the supreme court held that a tenant's immaterial breach may not cause forfeiture of a leasehold. *Id.* at 443, 788 P.2d at 1194. "While we will

uphold a forfeiture when the breach is significant, we do not believe we should so literally construe A.R.S. § 33–361 as to enable a landlord to obtain an undue advantage over his tenant by permitting forfeiture for every or any breach, no matter how trivial or technical." *Id.* Lease language permitting forfeiture must be construed in similar fashion. *Id.* at 444–45, 788 P.2d at 1195–96 ("regardless of the language of the lease, to justify forfeiture, the breach must be 'material,' 'serious,' or 'substantial.' ").

¶ 24 Under *Loehmann's,* a tenant's right to possession may not be conditioned on perfect performance of a commercial lease, but may be forfeited only upon a material breach. The lease at issue here conditioned Maleki's right to renew only on "compliance" with the lease. Because under these circumstances we view Maleki's contingent right to renew as analytically similar to the right of possession at issue in *Loehmann's,* we hold the principle of that case applies here: Maleki was entitled to exercise his right to renew unless he was in material breach of the lease.

¶ 25 Substantial evidence supports the superior court's conclusion that Maleki was "in compliance" with its terms, for purposes of the renewal provision.[2] The lease required Desert Palms to determine the rentable square footage of the property, and Desert Palms represented to Maleki on numerous occasions that the correct figure was 1,418 square feet. Maleki faithfully paid rent, taxes and fees for four years based on the square footage number Desert Palms provided. It was not until the last year of the five-year term that Desert Palms presented Maleki an invoice calculated on a revised square footage figure and demanded he pay back rent, taxes and fees on that amount within 30 days or face potential legal action. As the superior court concluded, at the time Maleki

---

**2.** *Loehmann's* suggests the materiality of a breach should be determined by the factors set out in Restatement (Second) of Contracts § 241 (1981). 163 Ariz. at 446–47, 788 P.2d at 1197–98. According to the Restatement, whether a breach is material depends, inter alia, on the "extent to which the injured party will be deprived of the benefit which he reasonably expected," the extent to which the injured party may be compensated by damages and the extent to which, by contrast, the breaching party may suffer forfeiture, the likelihood of cure and "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." Restatement (Second) of Contracts § 241. The superior court's reasoning implicitly took into account these factors.

notified Desert Palms of his intention to exercise his option to renew, there was at least a "good faith dispute" as to the correct rentable square footage and amounts owed.

¶ 26 Desert Palms argues Maleki materially breached the lease because, including taxes, he owed roughly $35,000 when the dispute arose. The superior court made no such finding, and the record lacks support for that assertion. Indeed, Desert Palms' November 6, 2006 letter informing Maleki of the square footage mistake asserted he owed $8,043 in back rent, taxes and fees. Its April 2, 2007 letter refusing renewal asserted $10,987 was past due, and its April 6 letter asserted only $14,617 was due.

¶ 27 Because the record contains substantial evidence that Maleki did not materially breach the lease, we conclude the superior court did not abuse its discretion in finding that for purposes of exercising the option to renew, Maleki was "in compliance" with the lease.

## B. Desert Palms' Breach of the Covenant of Good Faith and Fair Dealing.

### 1. Standard of review.

¶ 28 In Arizona, a covenant of good faith and fair dealing is implied in every contract. *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 423, ¶ 13, 46 P.3d 431, 434 (App.2002). This is so "neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.* (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986)). Whether a party has breached the covenant of good faith and fair dealing is a question of fact. *Wells Fargo Bank v. Ariz. Laborers Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 493, ¶¶ 69–70, 38 P.3d 12, 31 (2002). As such, we will not set aside the superior court's finding of breach "unless clearly erroneous, giving due regard to the opportunity of the court to judge the credibility of the witnesses." *In re Estate of Zaritsky*, 198 Ariz. 599, 601, ¶ 5, 12 P.3d 1203, 1205 (App.2000).

### 2. Substantial evidence supports the superior court's conclusion that Desert Palms breached the covenant of good faith and fair dealing.

¶ 29 Desert Palms argues the superior court "did not specifically delineate in its ruling *how* Desert Palms acted in 'bad faith.'" Not so. The court expressly found Desert Palms acted in bad faith by (1) bringing "contrived" and "improperly motivated" allegations based on its need for the space occupied by Maleki, (2) giving Maleki only 30 days to pay four years of back (and previously uncharged) rent, fees and taxes, (3) failing to invoice Maleki for fees as contemplated in the lease and (4) threatening to lock Maleki out of his space after refusing his tender of almost $10,000.

¶ 30 We cannot conclude that any of these findings was clearly erroneous. The record reveals that, as the superior court found, Desert Palms' record-keeping was sloppy and its payment demands upon Maleki were sporadic and inconsistent. After announcing that Maleki's payment obligations had been calculated based on a mistaken square footage number, Desert Palms disregarded Maleki's attempts to have an impartial third party measure the space. Particularly during the last year of the lease term, Desert Palms' various requests for payment presented a moving target. Under the circumstances, the court did not err by finding that Desert Palms breached the covenant of good faith by rejecting Maleki's tender and threatening to take possession when Maleki did not comply.

¶ 31 Desert Palms argues that its threats to re-enter and take possession of the leasehold were authorized by law. But as discussed above, the statute on which Desert Palms relies, A.R.S. § 33–361, does not permit a landlord to take possession upon an immaterial breach by a tenant. Because Maleki's breaches, if any, were immaterial, pursuant to *Loehmann's*, Desert Palms lacked the power under A.R.S. § 33–361 to re-enter and take possession.

### C. Attorney's Fees.

¶ 32 We review the superior court's award of attorney's fees and costs for an

abuse of discretion. *Charles I. Friedman, P.C. v. Microsoft Corp.,* 213 Ariz. 344, 350, ¶ 17, 141 P.3d 824, 830 (App.2006). We will uphold the court's award of attorney's fees and costs if it has "any reasonable basis." *State Farm Mut. Auto. Ins. Co. v. Arrington,* 192 Ariz. 255, 261, ¶ 27, 963 P.2d 334, 340 (App.1998).

¶ 33 In its initial minute order, the court held Maleki was entitled to his reasonable attorney's fees and costs "[a]s damages for [Desert Palms'] violation of the implied covenant of good faith and fair dealing."[3] The court later held that Maleki was entitled to his reasonable attorney's fees as the successful party in the litigation under A.R.S. § 12–341.01 (2003). Because we conclude the superior court did not abuse its discretion in awarding fees pursuant to A.R.S. § 12–341.01(A), we need not consider its finding that fees also were appropriate as damages for Desert Palms' breach of the covenant of good faith and fair dealing.

¶ 34 Desert Palms argues the court erred in finding Maleki was the successful party pursuant to A.R.S. § 12–341.01(A) because Desert Palms "undisputedly proved its contract claim" and the superior court "failed to find that Maleki proved any of his claims." As the facts recounted above show, however, Maleki brought this litigation seeking a declaration that he was entitled to possession, and he won such a ruling.

¶ 35 "The decision as to who is the successful party for purposes of awarding attorneys' fees is within the sole discretion of the trial court, and will not be disturbed on appeal if any reasonable basis exists for it." *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.,* 178 Ariz. 425, 430, 874 P.2d 982, 987 (App.1994). The superior court had a reasonable basis for concluding Maleki was the successful party in the litigation.[4] For that reason, we affirm the award of attorney's fees and the amount of the award.

3. A breach of the implied covenant of good faith and fair dealing "may provide the basis for imposing damages." *Wells Fargo Bank,* 201 Ariz. at 491, ¶ 60, 38 P.3d at 29.

4. Desert Palms argues the superior court failed to find that either party offered a claim or de-

## CONCLUSION

¶ 36 For the forgoing reasons, we affirm the judgment of the superior court. In our discretion, we grant Maleki his attorney's fees and costs on appeal, contingent on compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: PETER B. SWANN, Presiding Judge and JOHN C. GEMMILL, Judge.

fense that constituted "harassment," was "groundless" and "not made in good faith." *See* A.R.S. § 12–341.01(C). But as we have held, the court had the discretion to award fees pursuant to A.R.S. § 12–341.01(A), without regard to subpart (C).