NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

VR PARTNERS SRS, LLC, an Arizona limited liability company; VELOCITY RETAIL GROUP, LLC, a Delaware limited liability company, formerly known as STAUBACH RETAIL SERVICES-WEST, LLC, a Delaware limited liability company, *Plaintiffs/Appellees/Cross-Appellants,*

*v.*

STAUBACH RETAIL SERVICES, INC., a Texas corporation doing business as SRS REAL ESTATE PARTNERS; and SRS REAL ESTATE PARTNERS, LLC, a Delaware limited liability company, *Defendants/Appellants/Cross-Appellees.*

No. 1 CA-CV 13-0504
FILED 1-20-2015

---

Appeal from the Superior Court in Maricopa County
No. CV2009-026500
The Honorable Hugh E. Hegyi, Judge

**AFFIRMED**

---

COUNSEL

Osborn Maledon, PA, Phoenix
By Colin F. Campbell, John L. Blanchard, Thomas L. Hudson
*Counsel for Plaintiffs/Appellees/Cross-Appellants*

Dickinson Wright, PLLC, Phoenix
By Robert A. Shull, Anne L. Tiffen
*Counsel for Defendants/Appellants/Cross-Appellees*

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Michael J. Brown joined.

**S W A N N**, Judge:

¶1        This appeal involves the separation of two members of a limited liability company operating as a commercial real estate brokerage in Phoenix. Staubach Retail Services, Inc. and its assignee SRS Real Estate Partners, LLC, appeal from an order requiring them to pay Plaintiffs VR Partners SRS, LLC, and Velocity Retail Group, LLC, a share of revenues generated from an office located in Newport Beach, California. They also appeal the court's finding that Plaintiffs did not breach an implied covenant of good faith and fair dealing. Plaintiffs cross-appeal, arguing the superior court erred by denying their request for attorney's fees as the prevailing party at trial. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        The parties entered into an LLC operating agreement in 2005, launching Staubach Retail Services-West, LLC ("SRS-West").[1]   SRS-West is a Delaware limited liability company that operated as a commercial real estate brokerage in Phoenix. Under the LLC agreement, Plaintiffs owned 25 percent of SRS-West and Defendants owned 75 percent. The LLC agreement provided that SRS-West would have "the exclusive right to operate in the Region as a subsidiary of [Staubach Retail Services, Inc.]" The agreement defined "Region" as "the states of Arizona, Nevada, New Mexico, and Utah."

¶3        The LLC agreement designated one representative from each party as managers of SRS-West. The agreement gave these managers "complete authority to make any and all amendments to [the LLC agreement] as they may deem appropriate." In accordance with this provision, the parties twice amended

---

[1]        Before SRS-West was organized, another limited liability company with the same name already existed and operated out of an office in Newport Beach, California. That entity's region was initially defined as "the Western region of the United States." One week before the formation of the new SRS-West, however, the entity changed its name to Staubach Retail Services-Southern California, LLC ("SRS-SoCal"), and redefined its region as "Southern California."

the LLC agreement in writing. The first amendment expanded SRS-West's region to encompass Wyoming and Montana. The second amendment changed the ownership structure of the company, increasing Plaintiffs' ownership interest to 45 percent and decreasing Defendants' interest to 55 percent.

¶4 In connection with the second amendment, the parties executed an assignment of interest that included the following clause:

> This Assignment contains the entire understanding between the parties hereto with respect to the subject matter hereof and supersedes any prior understandings, agreements or representations, written or oral, relating to the subject matter hereof . . . .

¶5 Around this time, Staubach Retail Services, Inc., announced a plan to "roll up" its various branches, including SRS-West, into a single national entity. Plaintiffs decided not to participate, prompting the parties to negotiate a separation of SRS-West.

¶6 After months of negotiation, the parties executed a reorganization agreement that gave Plaintiffs complete ownership of SRS-West and left Defendants free to compete as a separate commercial real estate brokerage. In connection with the reorganization, Plaintiffs changed the name of SRS-West to Velocity Retail Group, LLC.

¶7 Under the reorganization agreement, the parties agreed that certain "house revenues" of the old SRS-West would continue to be split 45 percent to Plaintiffs and 55 percent to Defendants for approximately two years. House revenues referred to money left over from a sale after paying salesperson and broker commissions.

¶8 The reorganization agreement stated that the LLC agreement "represents the full and complete agreement between the managers, members, and officers of [SRS-West] and no other instrument, document, or other agreement relates to or would otherwise affect the agreements of the mangers and members of [SRS-West]." It also provided that the reorganization agreement "supersedes all prior agreements, whether written or oral, between the Parties with respect to its subject matter . . . and constitutes . . . a complete and exclusive statement of the terms of the agreement between the Parties with respect to its subject matter."

¶9 Soon after the parties entered into the reorganization agreement, a disagreement arose as to its meaning. Plaintiffs believed the reorganization agreement required sharing of house revenues on new deals for only a handful of

shared clients. Defendants, on the other hand, believed it required sharing of house revenues on all new deals on all accounts.

¶10 The parties resolved this issue in favor of Defendants by entering into a partial settlement agreement. In it, the parties acknowledged that revenues generated on all new deals from the date of the reorganization agreement until June 30, 2011, would be shared, except for those generated by new hires, i.e., salespeople hired after the date of the reorganization agreement.

¶11 In August 2009, Plaintiffs filed a complaint in superior court, requesting, among other things, that the court declare the parties were free to set their own house splits and that it award them a share of house revenues generated by the Newport Beach office, either based on the parties' agreements or on the theory of promissory estoppel. Defendants counterclaimed, arguing, as relevant here, that Plaintiffs had breached the implied covenant of good faith and fair dealing by improperly and unilaterally changing how they calculated their house revenues.

¶12 A major issue at the ensuing bench trial was whether the parties orally amended the LLC agreement to add the Newport Beach office into SRS-West's "Region." After evaluating the evidence, the court found that the only relevant agreement as to Region was the LLC agreement; that the LLC agreement permitted oral amendments; and that the parties orally amended the LLC agreement to add Newport Beach to SRS-West's region. Therefore, the court concluded that Plaintiffs were entitled to an interest in house revenues from the Newport Beach office under the parties' agreements.

¶13 The court also concluded Defendants were "promissorily estopped" from denying Plaintiffs owned a 45 percent interest in Newport Beach office revenues. It found that Defendants had misrepresented to Plaintiffs that they "would conform the ownership documents to the oral agreement and course of conduct the parties had been following" related to Newport Beach, and that Plaintiffs detrimentally relied on those misrepresentations.

¶14 Finally, the court concluded Plaintiffs did not breach the implied covenant of good faith and fair dealing. In doing so, the court relied heavily on its findings that the parties were free to set their own house revenue formulas and that they both understood this when they entered into the partial settlement agreement.

¶15 Defendants timely filed a notice of appeal and Plaintiffs cross-appealed.

**DISCUSSION**

I.    The Judgment

¶16        In its liability ruling, the court found Plaintiffs owned a 45 percent interest in house revenues generated from the Newport Beach office, and instructed the parties to "submit new findings and conclusions relating to the appropriate measure of damages and remedies." In its subsequent damages ruling, the court found that "[a]ny house revenues collected on New Deals for . . . Newport Beach shall be shared by the parties 45% to [Plaintiffs] and 55% to [Defendants]." It also found that "[o]n Newport Beach Existing and New Deals that closed after May 11, 2009, 45% of house revenues collected should be paid from the closing to [Plaintiffs] under the Reorganization Agreement."

¶17        Defendants argue that the court lacked power to award revenues generated by the Newport Beach office because those revenues belong to SRS-SoCal, "a legally separate entity, which was not a party to the agreements at issue or to the action." Defendants contend that a judgment cannot bind one who is not a party to the action.

¶18        We agree with Defendants that a judgment cannot bind one who is not a party to the action, *see, e.g.*, *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100 (1969); *Parada v. Parada,* 196 Ariz. 428, 999 P.2d 184 (2000), but that is not what happened here. The judgment did not "bind" SRS-SoCal, nor did it require SRS-SoCal to hand over its own revenues to Plaintiffs. Instead, the parties stipulated that SRS Real Estate Partners, LLC, one of the named defendants and appellants, "would be the entity responsible for funding any judgment entered in this matter against [Defendants] and in favor of [Plaintiffs]."[2] Because a party, not SRS-SoCal, is bound by the judgment, we conclude that Defendants' argument is unavailing.

¶19        Defendants next argue the court erred in awarding these revenues because a judgment cannot require Defendants to pay money belonging to SRS-SoCal, which Defendants do not own or have. Although the language found in the liability and damages rulings could casually be read to mean that Defendants

---

2      Although *Zenith Radio Corp.* held that a stipulation was not "an adequate substitute for the normal methods of obtaining jurisdiction over a person or corporation," 395 U.S. at 110, that case is readily distinguishable from the case before us. There a *non-party* stipulated to be "bound by and liable for" a judgment, and the court found several defects with the stipulation. *See id.* Here, on the other hand, a *named party* stipulated to be responsible for the judgment, and the parties do not argue any defect with this stipulation.

are required to pay a percentage of actual house revenues generated by the Newport Beach office, the stipulation of the parties indicates otherwise. As the stipulation provides, SRS Real Estate Partners, LLC, is responsible for funding the judgment. Thus, the court's damages ruling merely refers to SRS-SoCal's revenues as the *measure* of damages rather than the source.

¶20 Finally, Defendants argue that if this court upholds the damages award, then at the very least it should require Plaintiffs to share in "the normal burdens of being an owner (operating expenses and other obligations of that entity)." We reject this argument because the court did not find Plaintiffs had an ownership interest in the Newport Beach office; it only concluded that Plaintiffs were entitled to share in house revenues. Absent an ownership interest, Plaintiffs have no ownership responsibilities.

II.     Parol Evidence

¶21 Defendants argue that the superior court erred by considering an oral amendment to the LLC agreement, which purportedly modified the reorganization agreement. Delaware law governs this issue and our standard of review is de novo. *See Town of Marana v. Pima County*, 230 Ariz. 142, 147, ¶ 21, 281 P.3d 1010, 1015 (App. 2012) (interpretation of contract, including application of parol evidence rule, reviewed de novo).

¶22 In Delaware, the parol evidence rule prohibits a court from considering evidence of a prior oral agreement to supplement or contradict the terms of a fully integrated writing. *See Scott v. Land Lords, Inc.*, 1992 WL 276429, at *3 (Del. Sept. 22, 1992).[3] This is because a fully integrated writing represents the complete and final expression of the parties and, as such, finally determines the subject. *See Taylor v. Jones*, 2002 WL 31926612, at *3 (Del. Ch. Dec. 17, 2002); *Cunningham v. Esso Standard Oil Co.*, 118 A.2d 611, 613 (Del. 1955). If an oral agreement does not modify the writing, however, the parol evidence rule does not operate to bar evidence of it. *See* Restatement (Second) of Contracts § 213(2) (2014)

---

[3]     Unpublished decisions have precedential value in Delaware. *See Aprahamian v. HBO & Co.*, 531 A.2d 1204, 1207 (Del. Ch. 1987) (unreported decisions are "entitled to great deference"); *Case Fin., Inc. v. Alden*, 2009 WL 2581873, at *6 n.39 (Del. Ch. Aug. 21, 2009) ("unpublished opinions have precedential value"); *see also Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 115 n.14 (2d Cir. 2003) (recognizing Delaware Rules of Court do not restrict citation to unpublished decisions for precedential value).

("A binding completely integrated agreement discharges prior agreements *to the extent that they are within its scope*.") (emphasis added).

¶23        Defendants argue the reorganization agreement is fully integrated and thus the court could not consider evidence of a prior oral agreement expanding SRS-West's region to encompass Newport Beach. We hold that the court properly considered this evidence because the oral agreement did not modify the terms of the reorganization agreement. *See id.*

¶24        By its own terms, the reorganization agreement limited its scope to its "subject matter." As the court found, Plaintiffs' region or territory "is not the subject matter of the Reorganization Agreement." "The relevant agreement as to the region owned by [Plaintiffs] is the LLC Agreement."

¶25        Thus, while the oral agreement undoubtedly modified the LLC agreement by redefining "Region" to include Newport Beach, it did not modify the subsequent reorganization agreement. Because the extent of Plaintiffs' region was a topic beyond the scope of the reorganization agreement, and was exclusively determined by the LLC agreement, the court did not err by considering evidence of an oral agreement that redefined Plaintiffs' region.

III.    Promissory Estoppel

¶26        Defendants argue the court erred by relying on promissory estoppel to enforce their oral promise to convey an interest in Newport Beach revenues to Plaintiffs. They contend the doctrine was precluded here by an express agreement -- the reorganization agreement -- which already governed how the parties would divide their house revenues. *See In re U.S. West, Inc. Secs. Litig.*, 201 F. Supp. 2d 302, 308 (D. Del. 2002), *aff'd*, 65 F. App'x 856 (3d Cir. 2003) ("[P]romissory estoppel is precluded by an express contract governing the relationship out of which the contract emerged . . . .") (internal quotations omitted). We review questions of contract interpretation de novo. *Town of Marana*, 230 Ariz. at 147, ¶ 21, 281 P.3d at 1015.

¶27        For the reasons set forth above, Defendants' argument fails. The reorganization agreement did not govern whether Plaintiffs had an interest in Newport Beach revenues because that agreement did not discuss the concept of "Region" at all. To resolve whether Plaintiffs had an interest in Newport Beach revenues, the court examined evidence of an oral agreement expanding SRS-West's Region to encompass Newport Beach, as well as the parties' course of

dealing. Consequently, the reorganization agreement did not preclude the doctrine of promissory estoppel here.[4]

IV.     Implied Covenant of Good Faith and Fair Dealing

**¶28**         After the parties entered into the partial settlement agreement, Plaintiffs modified the method by which they calculated their house revenues. The change resulted in an overall decrease in the amount of revenues Defendants previously had been receiving under the reorganization agreement.  At trial, Defendants argued this change amounted to a violation of the implied covenant of good faith and fair dealing, but the court disagreed.  Defendants now contend the court erred because the change deprived them of revenues they reasonably expected to receive under the agreements.

**¶29**         "Whether a party has breached the covenant of good faith and fair dealing is a question of fact." *Maleki v. Desert Palms Prof'l Props., L.L.C.*, 222 Ariz. 327, 333, ¶ 28, 214 P.3d 415, 421 (App. 2009).  We will not disturb factual findings unless they are clearly erroneous. *Id.*[5]

**¶30**         "The covenant of good faith and fair dealing is implied in every agreement in Delaware." *HSMY, Inc. v. Getty Petroleum Mktg., Inc.*, 417 F. Supp. 2d 617, 621 (D. Del. 2006).  It "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Dunlap v. State Farm Fire & Casualty Co.*, 878 A.2d 434, 442 (Del. 2005) (citation omitted).  The purpose of the covenant is "to ensure the parties' reasonable expectations are fulfilled." *Id.*

---

[4]     Defendants argue only that the doctrine of promissory estoppel was precluded by the reorganization.  They do not challenge the court's factual findings, nor do they challenge the court's application of those factual findings to the legal standard.  We therefore limit our review to that challenge.

[5]     Defendants argue the standard of review is de novo because the superior court incorrectly applied the law to "undisputed facts" in resolving the issue. *See Brink Elec. Constr. Co. v. Ariz. Dep't of Revenue*, 184 Ariz. 354, 358, 909 P.2d 421, 425 (App. 1995) ("When the material facts are undisputed, the role of this Court is to determine whether the trial court correctly applied the substantive law to those facts.") (citation omitted).  To the contrary, the facts here were disputed.  For example, the parties offered competing testimony as to what they reasonably expected to receive under the reorganization agreement. We therefore review for clear error. *See Maleki*, 222 Ariz. at 333, ¶ 28, 214 P.3d at 421.

**¶31**        In this case, there are sufficient facts to support the court's finding that Plaintiffs did not breach the covenant of good faith and fair dealing. For example, at trial Defendants' chief operating officer and negotiator testified that at the time the parties entered into the partial settlement agreement, he understood Plaintiffs' position was that the parties were free to calculate their own house split formulas on new deals. He also testified that in his view neither the reorganization agreement nor the partial settlement agreement restricted the parties' ability to change their house split formulas. Additionally, the court found that both parties "changed their house revenue formulas without notifying the other on at least one occasion." These facts, taken together, are more than enough to support the court's conclusion that Plaintiffs "did not violate their duty of good faith and fair dealing by modifying their house revenue formula." While such modifications might not always be to the benefit of both sides of the transaction, there was adequate evidence that the parties both intended and availed themselves of the right to change their formulas.

V.        Attorney's Fees at Trial

**¶32**        Plaintiffs cross-appealed the superior court's denial of their request for attorney's fees as the prevailing party at trial. Both parties agree Delaware law governs this issue. When we evaluate a fee-shifting provision, we generally enforce it according to its terms, so long as the provision is permitted by law and the award is reasonable. *See Geller v. Lesk*, 230 Ariz. 624, 627, ¶ 10, 285 P.3d 972, 975 (App. 2012). Under Delaware law, fee shifting is permitted only when provided by the parties in their agreement. *See J.J. White, Inc. v. Metro. Merch. Mart*, 107 A.2d 892, 894 (Del. Super. Ct. 1954).

**¶33**        The parties dispute whether the litigation arose under the LLC agreement, which provides for fee shifting in certain circumstances, or the reorganization agreement, which does not. Even if the litigation arose under the LLC agreement, however, the fee-shifting provision in that agreement does not authorize an award of attorney's fees in this case.

**¶34**        Section 8.12(d) of the LLC agreement only authorizes an award of attorney's fees in arbitration proceedings. The parties labeled section 8.12(d) "Costs of Arbitration" and placed it within the "Arbitration" section of the agreement. The language of section 8.12(d) similarly limits its scope by giving "exclusive authority" to an arbitrator to award "costs of arbitration." Thus, because there was no arbitration in this case, section 8.12(d) does not authorize an award of attorney's fees.

**¶35**        Plaintiffs' efforts to sever a stand-alone "fee-shifting provision" from the arbitration provision of section 8.12(d) fall short. Plaintiffs argue that "[w]hile

the Parties certainly waived the arbitration procedures, no one waived the fee shifting agreement that the costs of the dispute, including the '*costs incurred by any party for their attorneys, advisors and consultants, if any*' would be available to the prevailing party." (Emphasis added). But the clause quoted by Plaintiffs is not a stand-alone fee-shifting provision. That clause is an integral part of Section 8.12(d), indivisible from *the arbitrator* who was given *exclusive authority* to determine and award *costs of arbitration*, including attorney's fees. Simply reading section 8.12(d) in its entirety is enough to defeat Plaintiffs' argument: "Costs of Arbitration. The arbitrator will have exclusive authority to determine and award costs of arbitration, if any, and the costs incurred by any party for their attorneys, advisors and consultants, if any."

## CONCLUSION

¶36        For the foregoing reasons, the superior court properly awarded a share of Newport Beach revenues to Plaintiffs, did not clearly err by finding Plaintiffs comported with the implied covenant of good faith and fair dealing, and correctly denied Plaintiffs' request for attorney's fees. Plaintiffs request an award for attorney's fees incurred on appeal as the prevailing party pursuant to ARCAP 21(c), and A.R.S. § 12-341.01(A). We deny this request because Delaware law governs this appeal and does not authorize such an award. We affirm.

