360 P.3d 153

**SKYDIVE ARIZONA, INC., an Arizona corporation, Plaintiff/Appellant,**

v.

**Marc HOGUE, an individual; Skydive Force, Inc., an Arizona corporation; Skydive Coolidge, Inc., an Arizona corporation, Defendants/Appellees.**

**No. 1 CA–CV 14–0084.**

Court of Appeals of Arizona, Division 1.

Oct. 22, 2015.

360

Snell & Wilmer, LLP, By Sid Leach, Andrew M. Jacobs, Michael J. Coccaro, Phoenix, for Counsel for Plaintiff/Appellant.

Jennings, Strouss & Salmon, PLC, By Paul G. Johnson, Eric D. Gere, Phoenix, Counsel for Defendants/Appellees.

Presiding Judge RANDALL M. HOWE delivered the opinion of the Court, in which Judge JON W. THOMPSON and Judge LAWRENCE F. WINTHROP joined.

## OPINION

HOWE, Judge:

¶ 1 Skydive Arizona, Inc., appeals the trial court's order granting judgment in favor of Marc Hogue, Skydive Force, Inc., and Skydive Coolidge, Inc. (collectively, "Hogue")[1] on all of Skydive Arizona's claims. It argues that the court erred in (1) granting Hogue's motion to vacate and set aside judgment; (2) instructing the jurors that the limitations period for Lanham Act claims, 15 U.S.C. §§ 1051–1141n, was one year; (3) denying its claim for specific performance; and (4) awarding Hogue all his requested attorneys' fees, costs, and expenses. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 After three years in the United States Army, Hogue returned to Arizona. Hogue joined the Marine Corps Reserve and also entered a joint venture with a friend to open a commercial skydiving facility. In March 2002, Hogue incorporated Skydive Force and bought derelict airplanes from Lawrence Hill, founder and then-president of Skydive Arizona.

¶ 3 Hogue's friend, Mike Mullins, who operated a skydiving drop zone 11 miles from Skydive Arizona in Coolidge, offered to sell Hogue his commercial skydiving business, Arizona Skydiving Coolidge. Hogue asked Hill for his advice, and Hill agreed to support Hogue's business by leasing it airplanes. But because Hogue knew that a federal trademark lawsuit was pending between Skydive Arizona and Mullins about Mullins' skydiving business name, Hogue asked Hill about the name. Hill said that he did not care what Hogue named his skydiving business.

¶ 4 As provided in the sale contract, Hogue purchased from Mullins "the business and assets of Arizona Skydiving Coolidge, located at 6300 North Airport Rd., South Hangar, Coolidge, Arizona." As part of the sale, Hogue received the domain name, "www.arizona skydiving.com." Even though the City of Coolidge would not let Mullins assign his lease for the South Hangar of the Coolidge Airport to Hogue, Hogue began operating Mullins' former business in Coolidge, keeping its name as Arizona Skydiving Coolidge. The business included serving military contracts, operating a commercial drop zone, doing paragliding demonstrations, selling skydiving equipment, and leasing airplanes. After setting up the business, Hogue leased airplanes from Hill.

¶ 5 Some months later, Hill asked Hogue to sign an agreement to change his business name and give up the domain name. Because Hogue was a friend of both Hill and Mullins, he did not want to get involved in their dispute over the business name and agreed to enter into the contract.

¶ 6 Hill presented Hogue with a draft agreement, and Hogue agreed with most of the terms, but refused to give up the domain name. The parties to the "Settlement Agreement" were Hogue, Skydive Force, and Skydive Arizona. Both Hill and Hogue proposed changes to the agreement, but Hill made the edits to the draft. Hill signed the agreement as Skydive Arizona and Hogue in his individual capacity and as Skydive Force.

---

1. Because Hogue is the sole owner and equity shareholder of Skydive Force and Skydive Coolidge, for convenience, we refer to all three defendants as "Hogue."

¶ 7 The agreement stated that the parties "desire[d] to put an end to customer confusion" between the locations of Skydive Arizona and Hogue's business and that the agreement was intended to settle potential claims Skydive Arizona might have against Hogue in connection with the federal trademark lawsuit against Mullins. The agreement required in paragraph 4 that Hogue "immediately" change his business name to "Coolidge Skydiving" and that he stop using "Arizona Skydiving" or "any name including the word 'Arizona' in combination with any form of the word 'Skydive' or 'Skydiving.'"

¶ 8 For the domain name, the agreement provided in paragraph 8 that "[t]he parties have reached a compromise concerning the domain name ... that is being used in connection with the business involving the skydiving operations now being conducted by Marc Hogue at 6300 North Airport Road, South Hang[ar], Coolidge, Arizona 85228." Paragraph 8(a) stated that Skydive Force could continue to use the domain name as long as Hogue owned "at least 34% equity ownership of such business" and that he was "responsible for and actively involved in the management of such business":

> As long as Marc Hogue has at least a 34% equity ownership of such business, and is responsible for and actively involved in the management of such business, Marc Hogue may continue to use the domain name or website address of "www.arizona skydiving.com" in connection with such business involving the skydiving operations being conducted by Marc Hogue in Coolidge, Arizona. If either of those conditions cease to exists, (i.e., Marc Hogue no longer has at least a 34% equity ownership of such business, or is no longer responsible for and actively involved in the management of such business), then Marc Hogue agrees that the domain name or [website] address of "www.arizonaskydiving.com" will be promptly assigned to Skydive Arizona.

The agreement did not define "such business" as used therein. After signing the agreement, Hogue continued leasing airplanes from Hill.

¶ 9 A few months later, Hogue was deposed for the trademark lawsuit between Skydive Arizona and Mullins. At the deposition, Hogue reviewed the "Settlement Agreement." He explained that this agreement said "Arizona Skydiving" instead of "Arizona Skydiving Coolidge" and "Coolidge Skydiving" instead of "Skydive Coolidge," but otherwise correctly reflected the parties' agreement.

¶ 10 In April 2005, Hogue incorporated Skydive Coolidge and that entity joined Skydive Force in operating his business. Skydive Coolidge's primary purpose was to own and lease airplanes. Also in April, Hogue received a letter from Skydive Arizona's attorney stating that he was not complying with the agreement. The letter referred to a newspaper article that called Hogue's business "Arizona Skydiving." Hogue responded that Skydive Coolidge was making "every effort to set [itself] apart from [Skydive Arizona]" and that it would "continue to make every effort to be referred to by [its] proper name and not be confused with [Skydive Arizona]." Several months later, Hogue moved his business from Coolidge to Gila Bend, Arizona.

¶ 11 In 2006, Skydive Arizona's attorney notified Hogue that he was in breach of the agreement because he no longer had a "34% equity ownership of the business involving skydiving operations being conducted at 6300 North Airport Road, South [Hangar], Coolidge, Arizona" and that he was "no longer responsible for and actively involved in the management of that business." Pursuant to the agreement, Hogue had 30 days to cure the breach or assign the domain name to Skydive Arizona. If not, Skydive Arizona would take legal action. By this point, Skydive Force and Skydive Coolidge had expanded beyond renting equipment and airplanes; they had contracted with the United States Navy to provide parachute safety officers.

¶ 12 Because Hogue kept using the domain name, Skydive Arizona filed suit against him for specific performance, i.e., transferring the domain name to Skydive Arizona, and for breach of contract. Hogue's attorney then withdrew, and several months later Skydive

Arizona moved for summary judgment. The trial court did not rule on the motion because it received a voice mail from Hogue that he was on active duty in the Marine Corps and was in Tennessee for training. After a change of judge and at a status conference, where neither Hogue nor a representative was present, the court ordered him to file a response to Skydive Arizona's motion. With no response filed from Hogue, Skydive Arizona asked the court to rule on the motion. The court granted the motion and awarded attorneys' fees and costs.

¶ 13 Less than a year later in 2009, Hogue obtained new counsel and moved to vacate and set aside the judgment pursuant to Arizona Rule of Civil Procedure 60(c)(6). Hogue explained that during critical times in this suit, he was either on active military duty away from Arizona preparing for deployment or actually deployed to Iraq. He stated that he had never received the court's minute entry ordering him to respond and explained that he spoke with court personnel who told him that the case "was on the inactive calendar and that [he] did not have to do anything about [it] until [he] was released from active duty." Hogue also explained that although he was away, he maintained an active role in and was responsible for Skydive Force and Skydive Coolidge through friends and relatives. The court granted Hogue's motion and recognized that his military service delayed the suit.

¶ 14 Skydive Arizona then again moved for summary judgment, and Hogue cross-moved for summary judgment. The trial court found that the central issue was whether Hogue complied with paragraph 8(a) of the agreement, but the parties had proposed competing interpretations. Skydive Arizona argued that Hogue was no longer actively involved in the management of the skydiving business at the Coolidge location. But Hogue countered that he had been responsible for and was actively managing that skydiving business and that he was not required to operate it in Coolidge. The court held that a reasonable person could follow either party's proposed interpretation and therefore denied both motions.

¶ 15 During the litigation, Hogue incorporated Skydive Phoenix, Inc., which ran a skydiving business in Maricopa, Arizona, and used some of the same equipment that Hogue had purchased from Mullins. Skydive Force and Skydive Coolidge directly supported Skydive Phoenix by supplying airplanes and equipment. Consequently, Skydive Arizona moved to amend the complaint and sought to add federal trademark claims, alleging that Hogue was "using the confusingly similar mark 'Arizona Skydiving' in connection with a domain name that has directed Internet traffic to [his] business [Skydive Phoenix.]"

¶ 16 Hogue opposed the motion, arguing that Skydive Arizona was raising entirely new legal theories after discovery had closed and the parties had exchanged final disclosure statements. Skydive Arizona responded that the amendment "merely provide[d] a legal theory that [was] supported by factual issues already in the case" and that "the documents and information already produced in discovery [were] sufficient to support the new theory. No additional discovery [was] required." The court granted the motion, finding good cause under Arizona Rule of Civil Procedure 15. Skydive Arizona amended its complaint to include claims of unfair competition and trademark infringement under Lanham Act § 43(a) and/or § 32 and unfair competition and intent to profit under Lanham Act § 43(d).

¶ 17 Hogue moved for summary judgment on the Lanham Act claims, arguing that they were barred by the one-year statute of limitations provided in A.R.S. § 12–541(5). Hogue contended that because the Lanham Act did not provide a limitations period, courts had to apply analogous state law. He argued that the analogous state law was Arizona's trademark statute, A.R.S. § 44–1451, but that statute also did not provide a limitations period. Therefore, A.R.S. § 12–541(5)—which states that an action created by statute must be commenced and prosecuted within one year after it accrues—established the appropriate limitations period for Lanham Act claims in Arizona. Skydive Arizona responded that the appropriate limitations period was three years because the United

States Court of Appeals for the Ninth Circuit had already ruled that the analogous state law was A.R.S. § 12–543, Arizona's fraud statute. The trial court denied Hogue's motion, but agreed that the limitations period for Lanham Act claims in Arizona was one year.

¶ 18 The case proceeded to a jury trial on the contract and Lanham Act claims and then a bench trial on the equitable claim for specific performance. Hill testified that he and Hogue agreed that Hogue would change the business name, and he had accordingly edited the agreement. For the domain name, Hill testified that Hogue could keep it as long as he complied with paragraph 8(a), which required that Hogue maintain at least 34% equity in "such business" and continued to manage that business. Hill explained that "such business" referred to the business Hogue purchased from Mullins in Coolidge, as indicated by the numerous times its physical address was used in the agreement. Hill also explained that "now" in paragraph 8 referred to the person conducting the business, not the location.

¶ 19 In contrast, Hogue testified that his understanding of the agreement was that as long as he owned at least 34% equity in the skydiving business he bought from Mullins—regardless of its location—and was responsible for and actively managed it, he could continue to own the domain name. He gave three reasons why he would not have agreed to stay in Coolidge. First, when he was negotiating the agreement, he did not have a lease at Coolidge Airport and was not sure whether he could obtain the city's consent to operate at the Coolidge Airport. Second, he was concerned about the city's growth because urban sprawl tends to force drop zones to relocate. Third, he knew that he would soon be deployed to Iraq.

¶ 20 Hogue also testified that before buying Mullins' business, he incorporated Skydive Force, and Skydive Force conducted that business and still continued to conduct it. Since incorporating Skydive Force, Hogue has owned between 80 and 100% equity in the entity and was responsible for its management. Hogue further explained that the purpose of the settlement agreement—even though they were not actually settling any disputes—was for Hill to show that he was defending his federally recognized trademark, "Skydive Arizona," in his suit against Mullins.

¶ 21 After hearing arguments about the jury instruction for the Lanham Act limitations period, the court agreed with Skydive Arizona's argument that the instruction should be limited to the issue of damages and rejected Hogue's argument that the instruction should be written broadly to exclude evidence of acts that occurred outside the one-year limitations period. The final instruction provided that if the jurors found that Skydive Arizona proved its prima facie case for the Lanham Act claims, it could only award damages within the one-year limitations period:

> Defendants Marc Hogue and Skydive Force, Inc. have alleged that Plaintiff's trademark claims are both limited by the statute of limitations. A statute of limitations prevents Plaintiff from waiting too long to bring its claim. The Plaintiff filed its trademark infringement and cybersquatting claims on May 2, 2011. The statute of limitations for these claims is one year.

> If you find that Defendants have proven that Skydive Phoenix started using the domain name ... before May 2, 2011 and that Plaintiff has not proven that it did not know and did not have reason to know by the exercise of reasonable diligence the facts under the cause of action until after May 2, 2011, no damages occurring prior to May 2, 2011 may be awarded to Plaintiff.

¶ 22 The court granted Hogue's motion for judgment as a matter of law under Arizona Rule of Civil Procedure 50 for damages for the breach of contract claim because Skydive Arizona had failed to present evidence that it had suffered damages. The jurors found in Hogue's favor on the Lanham Act claims, but could not agree whether Hogue breached the contract to reach a verdict on the breach of contract claim. Because only the equitable claim for specific performance remained, the trial court ruled that no issues remained for the jurors and found in Hogue's favor on the

specific performance claim. In doing so, it found that Hogue had not breached the contract and that his use of the domain name was permissive. The court awarded Hogue attorneys' fees, costs, and expenses related to the specific performance claim under A.R.S. §§ 12–341 and 12–341.01 and paragraph 11 of the agreement, respectively.

¶ 23 As the prevailing party on all the claims, Hogue applied for attorneys' fees, costs, and expenses related to them, which Skydive Arizona opposed, arguing that the trial court had limited the award to only fees, costs, and expenses related to the specific performance claim. In its final order, the trial court granted judgment in Hogue's favor on all of Skydive Arizona's claims. It also awarded Hogue all his requested attorneys' fees, costs, and expenses. Skydive Arizona timely appealed.

## DISCUSSION [2]

### 1. Motion to Vacate and Set Aside Judgment

 ¶ 24 Skydive Arizona first argues that the trial court abused its discretion by granting Hogue's motion to vacate and set aside judgment under Arizona Rule of Civil Procedure 60(c)(6). A trial court enjoys broad discretion in deciding whether to set aside judgments under Rule 60(c). *Woodbridge Structured Funding, LLC v. Ariz. Lottery,* 235 Ariz. 25, 29 ¶ 21, 326 P.3d 292, 296 (App.2014). We review its decision for an abuse of discretion. *Rogone v. Correia,* 236 Ariz. 43, 48 ¶ 12, 335 P.3d 1122, 1127 (App.2014).

 ¶ 25 Under Rule 60(c)(6), a court may relieve a party from a final judgment for any reason justifying relief, provided that the movant can show "extraordinary circumstances of hardship or injustice justifying relief" and "a reason for setting aside the judgment other than one of the reasons set forth in the preceding five clauses of rule 60(c)." *Hilgeman v. Am. Mortg. Sec., Inc.,*

196 Ariz. 215, 220 ¶ 15, 994 P.2d 1030, 1035 (App.2000). Courts must consider the totality of facts and circumstances to determine whether Rule 60(c)(6) relief is appropriate. *Amanti Elec., Inc. v. Engineered Structures, Inc.,* 229 Ariz. 430, 432 ¶ 7, 276 P.3d 499, 501 (App.2012).

¶ 26 The trial court did not abuse its discretion in granting Hogue's motion. The record shows that Hogue demonstrated extraordinary circumstances justifying relief. While on active duty and undergoing predeployment training out-of-state, Hogue called the court to explain his situation and was told that his case would be put on the inactive calendar and that he would not have to take any action until released from active duty. The record also shows that Hogue left a voice mail for the court, informing it that he was on active duty and training out-of-state. The court acknowledged the message in a minute entry and ruled that it would take no action on Skydive Arizona's pending motion for summary judgment until Hogue's military duty would not preclude his participation.

¶ 27 After a change in judge, the court ordered Hogue to respond, even though it only had "second or third hand information" that he could participate in the proceedings. Hogue was unaware of the order, however, because he was on active duty out-of-state, and therefore, he did not respond. When the court granted the motion, Hogue was still on active duty out-of-state. A few days after the court entered judgment against him, Hogue departed for Iraq and remained there for seven months. Accordingly, the record shows that Hogue's military service constituted the extraordinary circumstances for delaying the suit. The court did not abuse its discretion in granting his Rule 60(c)(6) motion.[3]

### 2. Jury Instruction on the Lanham Act Claims

 ¶ 28 Skydive Arizona next argues that the trial court erred in instructing the jurors

---

2. During oral argument, the parties raised arguments not in their briefs. Those arguments are therefore waived, and we decline to address them. *See State v. Powers,* 200 Ariz. 123, 129 ¶ 21, 23 P.3d 668, 674 (App.2001) ("Arguments raised for the first time at oral argument are waived.").

3. Hogue argued that the Servicemembers Civil Relief Act, 50 U.S.C. App. §§ 501–97b, also supported his Rule 60 motion. Because the trial court did not grant Hogue relief on that basis, however, we do not address it.

that the limitations period for Lanham Act claims is one year. When a party challenges a jury instruction, reversal is justified only if the jury instruction was both erroneous and "prejudicial to the substantial rights of the appealing party." *American Pepper Supply Co. v. Fed. Ins. Co.*, 208 Ariz. 307, 309 ¶ 7, 93 P.3d 507, 509 (2004). Although the trial court erred by instructing the jurors that the limitations period for Lanham Act claims was one year, Skydive Arizona was not prejudiced.

### 2a. Error

■ ¶ 29 Skydive Arizona argues that this Court has to adopt a three-year limitations period because the United States Court of Appeals for the Ninth Circuit has already ruled on this issue. But decisions of the Ninth Circuit, although persuasive, are not binding on Arizona courts. *Planning Group of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.*, 226 Ariz. 262, 267 ¶ 22, 246 P.3d 343, 348 (2011); *see also Weatherford ex rel. Michael L. v. State*, 206 Ariz. 529, 533 ¶ 9, 81 P.3d 320, 324 (2003) (providing that "state courts are not bound by decisions of federal circuit courts" and that "we *may choose* to follow substantive decisions of the Ninth Circuit Court of Appeals") (emphasis added). Although we are not bound by the Ninth Circuit, we independently agree that the limitations period for Lanham Act claims in Arizona is three years as provided in A.R.S. § 12–543(3), Arizona's fraud statute.

¶ 30 The Lanham Act contains no explicit limitations period. *See generally* 15 U.S.C. §§ 1051–1141n. When a federal statute lacks a specific statute of limitations, "the courts apply the most closely analogous statute of limitations under state law." *Reed v. United Transp. Union*, 488 U.S. 319, 323, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989) (internal quotation marks and citation omitted). That is, we must select the limitations period that best effectuates the federal policy at issue. *See Madden–Tyler v. Maricopa Cty.*, 189 Ariz. 462, 465, 943 P.2d 822, 825 (App. 1997) ("If no limitation period exists for a federal case of action, a local time limitation will apply unless it conflicts with federal law or policy; federal interests must predomi-

nate."). Arizona's directly analogous law is its state trademark law, which also does not contain a limitations period. *See* A.R.S. § 44–1451. As they did before the trial court, the parties here disagree whether the applicable limitations period is three years as in fraud under A.R.S. § 12–543(3) or one year as in an action created by statute under A.R.S. § 12–541(5).

¶ 31 The limitations period applicable in this case is the three-year period as in fraud under A.R.S. § 12–543(3) because that statute serves the Lanham Act's purpose and is most analogous to the unfair competition claims under Lanham Act § 43(a) and (d). The language of the Lanham Act makes clear that both intent and fraud play an important role in all Lanham Act claims. Section 45 of the Act explicitly states that the federal policy underlying the act is, as relevant here, "to protect persons engaged in ... commerce against unfair competition" and "to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks." 15 U.S.C. § 1127; *see also Lexmark Intern., Inc. v. Static Control Components, Inc.*, — U.S. —, 134 S.Ct. 1377, 1389, 188 L.Ed.2d 392 (2014) ("Most of the enumerated purposes [of the Lanham Act] are relevant to false-association cases."); *POM Wonderful LLC v. Coca–Cola Co.*, — U.S. —, 134 S.Ct. 2228, 2234, 189 L.Ed.2d 141 (2014) ("The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling.").

■ ¶ 32 Further, the purposes of § 43(a), the trademark infringement provision, and § 43(d), the cybersquatting provision, promote the Act's general purpose. Section 43(a)'s purpose is "to eliminate deceitful practices in interstate commerce involving the misuse of trademarks, but along with this it sought to eliminate other forms of misrepresentation which are of the same general character even though they do not involve any use of what can technically be called a trade-mark." *Federal–Mogul–Bower Bearings, Inc. v. Azoff*, 313 F.2d 405, 409 (6th Cir.1963); *see also Smith v. Montoro*, 648 F.2d 602, 605 n. 3 (9th Cir.1981). Congress enacted § 43(d), as relevant here, to "protect

consumers and American businesses" because cybersquatting "results in consumer fraud and public confusion as to the true source or sponsorship of goods and services." S. Rep. No. 106–140, at 2, 4 (1999). Thus, both the text and purposes of the federal statute reveal that the Lanham Act, and in particular § 43(a) and (d), was designed to address claims of deception and misrepresentation, constituting trademark infringement, cybersquatting, and unfair competition.

¶ 33 The parties do not dispute that Arizona's most analogous law is its trademark statute, A.R.S. § 44–1451. Like the Lanham Act, that statute makes clear that fraud in the form of unfair competition and public confusion plays an important role in its claims. The purpose of Arizona's trademark law is to protect the public from confusion regarding sources of goods or services and to protect business from a diversion of trade through misrepresentation or appropriation of another's goodwill. 9 Ariz. Prac., Business Law Deskbook § 17:1 (2014–2015 ed.); *see also Edwards v. Super. Ct. of Ariz. in & for Maricopa Cty.*, 57 Ariz. 338, 340–41, 113 P.2d 930, 931 (1941) (stating that Arizona's trademark law was "passed to safeguard the tradesman against the tricks and devices of other tradesmen or persons").

¶ 34 "The gist of a claim of [trademark infringement] is unfair competition." *Raizk v. Southland Corp.*, 121 Ariz. 497, 591 P.2d 985, 986 (App.1978); *see also International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 915–16 (9th Cir.1980) (stating that trademark infringement is a species of the generic concept of unfair competition and therefore the claims are "substantially congruent"). The "universal test [for unfair competition] is whether the public is likely to be deceived." *Boice v. Stevenson*, 66 Ariz. 308, 315, 187 P.2d 648, 653 (1947). That is, the "ultimate question is always whether trade is being unfairly diverted, and whether the public is being cheated into the purchase of something which it is not in fact getting; *the courts interfere solely to prevent deception.*" *Bank of Ariz. v. Ariz. Cent. Bank*, 40 Ariz. 320, 322, 11 P.2d 953, 954 (1932) (emphasis added); *see also id.* at 325, 11 P.2d at 954 ("The

law of unfair competition in trade is of comparatively recent origin and growth . . . , but it has been and is being extended to cover all instances of fraudulent interference with another business.").

¶ 35 Consequently, the prevention of fraud plays an important role in both the Lanham Act and Arizona's trademark statute and the unfair competition doctrine. The limitations period applicable in this case is therefore properly A.R.S. § 12–543(3), Arizona's fraud statute, establishing a three-year period "after the cause of action accrues . . . [f]or relief on the ground of fraud." Our conclusion accords with other courts that have considered this issue and have concluded that claims brought under the Lanham Act are most comparable to claims brought for fraud. *See, e.g., Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir.2002); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191–92 (2d Cir.1996); *Ranch Realty, Inc. v. DC Ranch Realty, LLC*, 614 F.Supp.2d 983, 989 (D.Ariz.2007); *Johannsen v. Brown*, 797 F.Supp. 835, 839–40 (D.Or. 1992).

¶ 36 Hogue counters that the limitations period is one year as an action created by statute under A.R.S. § 12–541(5). He argues that because Arizona's trademark law has an additional element—proof that the trademark at issue was registered—not found in the common law doctrine of unfair competition, the statute creates a new cause of action. But Hogue misinterprets the interplay between Arizona's trademark statute and the common law claim. The trademark statute establishes a liability congruent with the common law doctrine; it specifically provides that it "shall [not] affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law." A.R.S. § 44–1452. Accordingly, A.R.S. § 12–541(5) is inapplicable because that statute does not "include or extend to actions arising under the common law" and instead "applies only where a liability would not exist but for a statute." *Andrews ex. rel. Woodard v. Eddie's Place, Inc.*, 199 Ariz. 240, 242 ¶ 7, 16 P.3d 801, 803 (App.2000). To be clear, even without Arizona's trademark law, liability would exist under the common law theory of

unfair competition, which encompasses several tort theories, including trademark infringement. *Fairway Constructors, Inc. v. Ahern,* 193 Ariz. 122, 124 ¶ 9, 970 P.2d 954, 956 (App.1998). Consequently, the trial court erred in instructing the jurors that the limitations period for Lanham Act claims was one year.

### 2b. Prejudice

■ ¶ 37 Even though the trial court erred in its instruction, Skydive Arizona suffered no prejudice. Prejudice "will not be presumed but must affirmatively appear from the record." *Walters v. First Fed. Sav. & Loan Ass'n,* 131 Ariz. 321, 326, 641 P.2d 235, 240 (1982). Skydive Arizona's only argument on appeal regarding prejudice is that the court's error prevented it from presenting evidence of "actual confusion to guide the [jurors] in determining whether there was a likelihood of confusion"—a critical element in Lanham Act claims. To support its argument, Skydive Arizona points to six customer waivers signed from December 2010 to April 2011, outside the one-year limitations period. But nothing in the instructions—instructions that Skydive Arizona agreed were an accurate statement of the law—limited the jurors' ability to consider the proffered evidence, including the waivers, in deciding the likelihood of confusion element. The instruction's plain language indicates that it was limited to the issue of damages, and the jurors could consider damages only after they found that Skydive Arizona proved its prima facie case.

¶ 38 Moreover, the record shows that the court allowed Skydive Arizona to present evidence on its Lanham Act claims for events that occurred as far back as September 8, 2010—the date Skydive Phoenix was incorporated and therefore the appropriate period Skydive Arizona's claim of actual confusion spanned. The record also shows that the jurors heard about and had access to the waivers: Skydive Arizona discussed the waivers during opening statement and closing argument, they were admitted into evidence without limiting instructions, and both Hill and Hogue testified about them. Consequently, although the trial court erred in its

instruction, the error did not prejudice Skydive Arizona.

### 3. Specific Performance

■ ¶ 39 Skydive Arizona next argues that the trial court erred in denying its specific performance claim. It contends that the settlement agreement's plain language clearly provided that Hogue's use of the domain name was limited to use in connection with the business involving the skydiving operations at 6300 North Airport Road, South Hangar, Coolidge, Arizona 85228. We review a trial court's refusal to order specific performance for an abuse of discretion, *County of La Paz v. Yakima Compost Co., Inc.,* 224 Ariz. 590, 609 ¶ 59, 233 P.3d 1169, 1188 (App.2010), but its interpretation of a contract de novo, *Rand v. Porsche Fin. Servs.,* 216 Ariz. 424, 434 ¶ 37, 167 P.3d 111, 121 (App.2007).

### 3a. Interpretation of the Settlement Agreement

■ ¶ 40 When the terms of a contract are clear and unambiguous, the trial court gives effect to it as written. *Town of Marana v. Pima Cty.,* 230 Ariz. 142, 147 ¶ 21, 281 P.3d 1010, 1015 (App.2012). But when parties submit competing interpretations of the contract rendering its terms unclear, the court should consider the proffered evidence. *Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 154, 854 P.2d 1134, 1140 (1993). If the court "finds that the contract language is reasonably susceptible to the interpretation asserted by its proponent, the evidence is admissible to determine" the parties' intent. *Id.* (internal quotation marks and citation omitted). If the contract remains unclear after considering the parties' intent, the court construes the provision "against the drafter." *MT Builders, L.L.C. v. Fisher Roofing, Inc.,* 219 Ariz. 297, 302 ¶ 10, 197 P.3d 758, 763 (App. 2008).

¶ 41 Skydive Arizona argues that the agreement provided that for Hogue to keep the domain name, he had to hold at least 34% equity interest in and actively manage the skydiving business in Coolidge. Skydive Arizona contends that "such business" in para-

graph 8(a) means only the business conducted at the Coolidge location. Hogue counters that Skydive Arizona's argument was essentially adding a third condition to paragraph 8(a); that is, in addition to Hogue owning at least 34% interest in and actively managing the business he purchased from Mullins, the business had to be in Coolidge. He contends that because the parties had agreed that the name would be changed after the agreement was signed, the language mentioning the Coolidge location was simply a method of identifying the business.

¶ 42 The agreement's language is reasonably susceptible to both interpretations. The multiple references to the business's address in Coolidge or to just "Coolidge, Arizona" throughout the agreement could mean that it was meant to be a limiting condition for Hogue. That is, for him to keep the domain name, he had to have at least 34% equity interest in the business in Coolidge and he had to actively manage that business in Coolidge. On the other hand, the use of "now conducts," "now being conducted," and "being conducted" throughout the agreement in conjunction with the physical address could mean that mentioning the Coolidge location was a method of identifying the existing business.

¶ 43 The extrinsic evidence supports Hogue's interpretation. Although Hill testified that he and Hogue agreed that Hogue's business name would be Coolidge Skydiving, Hogue testified during trial—and three months after signing the agreement in a deposition—that he did not agree to use that name, and in fact, he had not completely decided on a name. Hill further testified that the "now" language was referring to the person conducting the business, not the location. But Hogue explained that he would not have signed the agreement had he been limited to Coolidge because he (1) had not been sure whether he could get a lease from the City of Coolidge for the Coolidge Airport; (2) was aware that urban sprawl might force him to relocate the business; and (3) knew that his commitments to the Marine Corps made it likely that he would be deployed to Iraq in the near future.

¶ 44 Skydive Arizona's interpretation is also contrary to one of the agreement's purposes: to put an end to customer confusion between the two locations. The agreement stated that when Hogue was operating the business in Coolidge, some customers would make reservations at one location, but then show up at the other location by mistake. Hogue's business in Coolidge was 11 miles away from Skydive Arizona and requiring him to perpetually operate out of Coolidge to keep the domain name is inconsistent with the agreement's purpose. Keeping Hogue at that location would increase the possibility of customer confusion.

¶ 45 Consequently, the extrinsic evidence supports Hogue's interpretation that to keep the domain name, he had to hold at least a 34% interest in the business he purchased from Mullins and was responsible for and actively managing that business, regardless of its location. Further, even if the agreement's language remained unclear after considering the extrinsic evidence, because Hill drafted the agreement, we would have construed the agreement against Skydive Arizona. *See MT Builders*, 219 Ariz. at 302 ¶ 10, 197 P.3d at 763.

### 3b. Denial of Specific Performance

¶ 46 Skydive Arizona next argues that the trial court erred in denying its specific performance claim because the parties had a valid contract, the terms were certain and fair, Skydive Arizona has not acted inequitably, specific performance would not inflict hardship on Hogue, and Skydive Arizona has no remedy at law. "Specific performance is a remedy available for breach of contract," however. *Daley v. Earven*, 131 Ariz. 182, 187, 639 P.2d 372, 377 (App.1981); *see also* Restatement (Second) of Contracts § 357(1) ("[S]pecific performance of a contract duty will be granted in the discretion of the court against a party who has committed or is threatening to commit a breach of the duty.").

¶ 47 Hogue has not breached the contract, however, and therefore, Skydive Arizona is not entitled to specific performance. The agreement in paragraph 8(a) required that Hogue transfer the domain name to Skydive

Arizona if he either no longer owned at least 34% equity interest in the business he purchased from Mullins or was no longer responsible for and actively managing that business. Hogue owned and continues to own at least a 34% equity interest in the business he bought from Mullins. This is because throughout the years, he retained between 80 to 100% interest in Skydive Force—the entity that Hogue created before the sale and that after the sale held the assets and began operating the business and continues to operate that business.

¶ 48 Hogue has been responsible for and continues to actively manage the business, even while deployed. After purchasing Mullins' business, Skydive Force, and Skydive Coolidge beginning in 2005, operated the business, expanding into areas including the United States Navy and other military contracts and modifying the nature of the business to accommodate Hogue's active duty service. The record also shows that while deployed, Hogue's friends and relatives, especially his grandmother, helped him manage the business.

¶ 49 Further, since Skydive Phoenix was incorporated in 2010, Skydive Force and Skydive Coolidge have worked collaboratively with that entity, which uses some of the assets Hogue purchased from Mullins, by supplying that entity with airplanes and equipment. Consequently, Hogue has not breached paragraph 8(a) because he has owned at least 34% interest in Skydive Force and Skydive Coolidge, which are the entities operating the business Hogue bought from Mullins, and he has been and continues to be responsible for and actively managing those entities. Accordingly, because Hogue has not breached paragraph 8(a), Skydive Arizona is not entitled to specific performance.

### 4. Attorneys' Fees, Costs, and Expenses at Trial

■■■■■ ¶ 50 Skydive Arizona next contends that the trial court erred in awarding Hogue all his requested attorneys' fees, costs, and expenses. It contends that Hogue was only awarded fees, costs, and expenses incurred for count one, the specific performance claim, and not for the other counts,

because in a minute entry the court only awarded those amounts related to count one. The applicability of A.R.S. §§ 12–341 and 341.01 is a question of statutory interpretation that we review de novo. *Modular Mining Sys., Inc. v. Jigsaw Technologies, Inc.,* 221 Ariz. 515, 521 ¶ 21, 212 P.3d 853, 859 (App.2009). We review a trial court's award of fees and costs for an abuse of discretion, *Maleki v. Desert Palms Prof'l Props., L.L.C.,* 222 Ariz. 327, 333–34 ¶ 32, 214 P.3d 415, 421– 22 (App.2009), and will uphold the court's ruling if it has "any reasonable basis," *State Farm Mut. Auto. Ins. Co. v. Arrington,* 192 Ariz. 255, 261 ¶¶ 27–28, 963 P.2d 334, 340 (App.1998).

¶ 51 The trial court did not abuse its discretion in awarding Hogue all his requested fees, costs, and expenses. In its final order—as the Arizona Rule of Civil Procedure 54(c) language indicates—the court granted judgment in favor of Hogue and against Skydive Arizona on all of Skydive Arizona's claims and awarded Hogue all his requested fees, costs, and expenses. After considering Hogue's request and Skydive Arizona's opposition, the court was within its discretion to award fees, costs, and expenses to Hogue, the successful party. Further, the minute entry Skydive Arizona refers to addressed only the specific performance claim, and therefore, the court properly only ordered fees, costs, and expenses related to that claim.

■■■■ ¶ 52 Skydive Arizona further argues that the trial court abused its discretion by ordering fees, costs, and expenses for the Lanham Act claims because those claims are not "inextricably intertwined" with the contract claims. "It is well-established that a successful party on a contract claim may recover not only attorneys' fees expended on the contract claim, but also fees expended in litigating an interwoven tort claim." *Modular Mining Sys.,* 221 Ariz. at 522 ¶ 23, 212 P.3d at 860. Claims are interwoven when they are based on the same set of facts and involve common allegations, which require the same factual and legal development. *Id.* at 522–23 ¶¶ 23–24, 212 P.3d at 860–61; *see also Bennett v. Baxter Grp., Inc.,* 223 Ariz. 414, 420 ¶ 23, 224 P.3d 230, 236 (App.2010)

(concluding that fees can be awarded on non-contract claims "when these claims are so factually connected to a contract claim that they require the same work that is already necessary for the defense or prosecution of the contract claim alone"); *Zeagler v. Buckley*, 223 Ariz. 37, 39 ¶ 9, 219 P.3d 247, 249 (App.2009) (holding that fees may be awarded when "claims are so interrelated that identical or substantially overlapping discovery would occur").

¶ 53 Because the Lanham Act claims were inextricably interwoven with the contract claims, the trial court did not err in awarding Hogue fees, costs, and expenses. The Lanham Act claims were "substantially dependent upon" provisions of the agreement and the "ability to prevail" on the contract claims. *Modular Mining Sys.*, 221 Ariz. at 523 ¶ 25, 212 P.3d at 861. Hogue asserted as a defense that the agreement gave him permission to use the domain name, and lack of permission was an element in Skydive Arizona's case. As Skydive Arizona previously stated: "If [Hogue] prevails in [his] theory that [he did not] need to return the domain name to Skydive Arizona under the terms of the Settlement Agreement, then [he] will necessarily prevail on the proposed Lanham Act claims. No further extensive discovery is to be necessary." Thus, Skydive Arizona's Lanham Act claims necessarily fail unless it prevailed on its contract claims. Moreover, all four claims required the same factual development, and all depositions and all other work related to discovery and disclosure were necessary in connection with all four claims. That is, Skydive Arizona alleged that Hogue breached the agreement and refused to assign the domain name to Skydive Arizona; therefore, he did not have permission under the agreement to use the domain name and was infringing on Skydive Arizona's trademark. Consequently, the trial court did not abuse its discretion in awarding Hogue his requested fees, costs, and expenses.

### 5. Attorneys' Fees, Costs, and Expenses on Appeal

¶ 54 Skydive Arizona requests attorneys' fees and expenses incurred on appeal pursuant to A.R.S. § 12–341.01(A) and paragraph 11, respectively. Because Skydive Arizona is not the successful party, we deny its request. Hogue requests fees, costs, and expenses incurred on appeal pursuant to A.R.S. § 12–341.01(A) and paragraph 11. Because Hogue is the successful party, we award costs, fees, and expenses pursuant to A.R.S. §§ 12–341 and 12–341.01 and paragraph 11, respectively.

### CONCLUSION

¶ 55 For the foregoing reasons, we affirm.