NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WILLIAMSFIELD/HIGLEY LIMITED PARTNERSHIP,
*Plaintiff/Appellee,*

*v.*

CYNTHIA STREN, *Defendant/Appellant.*

No. 1 CA-CV 18-0322
FILED 2-11-2020

Appeal from the Superior Court in Maricopa County
No.  CV2016-052096
The Honorable Aimee L. Anderson, Judge *(Retired)*
The Honorable Cynthia J. Bailey, Judge

**REVERSED AND REMANDED**

COUNSEL

Clark Hill PLC, Scottsdale
By Ryan J. Lorenz
*Counsel for Defendant/Appellant*

Porter Law Firm, Phoenix
By Robert S. Porter
*Counsel for Plaintiff/Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

_____

**T H U M M A**, Judge:

¶1 Defendant Estate of Steven Stren by administrator Cynthia Stren (collectively the Estate) appeals the denial of a motion to set aside judgment and for new trial. The judgment for nearly $700,000, entered in favor of plaintiff Williamsfield/Higley Limited Partnership (Partnership), was the product of a stipulation by the Estate's attorney who stated in open court that he had been unable to contact his client to discuss the proposed stipulation. Because the stipulation was not binding on the Estate, and because the Estate properly demonstrated legitimate potential defenses, the denial of the motion to set aside is reversed and this matter is remanded for further proceedings consistent with this decision.

**FACTS AND PROCEDURAL HISTORY**

¶2 The facts leading up to this case span more than two decades, and the procedural history is unusual and complicated. In 1997, Steven Stren was the sole member-manager of Williamsfield Management L.L.C. (LLC). At that time, in a written agreement, the LLC became the general partner of the Partnership, agreeing to accept "all the powers, privileges and obligations of the general partner." That written agreement, however, did not specify what obligations the LLC assumed.

¶3 Between 2002 and 2006, various individuals and entities related in some way to the Partnership and the LLC signed several promissory notes. Some notes were between the LLC and Stren; others were between Jaystren Holdings Limited and the LLC or the Partnership; while still others were between Stren and the Partnership. The notes set the annual interest rate at either four or five percent.

¶4 In 2012, Stren died. As a result, the LLC was administratively dissolved for lack of a statutory agent and valid agent address.

¶5 In April 2016, the Partnership sued the Estate, seeking: (1) $462,043 plus ten percent interest, alleged to be owing on the 1997 written agreement with the LLC and (2) $97,322.40 plus ten percent interest, alleged to be owing on the notes. The five-page operative complaint did not provide

any specifics about the 1997 written agreement or the notes and did not attach any exhibits. The complaint did not seek to pierce the form of the LLC or any other entity and did not allege why the Estate would be liable for the LLC's debts.

¶6            The litigation did not go well for the Estate, given the inaction, lack of communication and improper representations by the Estate's counsel.

¶7            Two defaults were entered against the Estate at the outset. The Estate eventually filed an answer in January 2017, nine months after the Partnership sued. When the Estate failed to respond to a motion to amend, the Partnership was allowed to amend its complaint. When the Estate did not respond to the amended complaint, the Partnership filed another application for entry of default. Only then, did the Estate answer the amended complaint.

¶8            In August 2017, the court set a two-day jury trial for December 4 and 5, 2017, and ordered the parties to make pretrial filings by November 9, 2017. On November 9, 2017, the Partnership made several filings (proposed verdict forms, requested jury instructions, time estimates and its pretrial statement), noting the Estate "has not provided any input" and had failed to engage or participate in what should have been a joint filing. The Partnership also moved for sanctions, stating the Estate "has failed to submit any disclosure statement" to the Partnership, and failed to submit court-ordered exhibits, jury instructions, verdict forms or time estimates. The proposed form of order submitted with the request (which is not in the record on appeal) apparently sought sanctions against the Estate's attorney, not the Estate.

¶9            Almost immediately, the court struck the Partnership's filings and directed the parties to make joint pretrial filings by November 16, 2017. In doing so, the court noted the Estate's "failure to timely file anything or cooperate with [the Partnership] in filing what was previously Court ordered is unacceptable."

¶10           On November 16, 2017, the Partnership again made various filings, again noting the Estate's counsel "has neither contacted [the Partnership's] attorney nor provided him any portion of [the Estate's] submission of the Pretrial Statement." The Partnership also sought leave to unilaterally make these filings, noting the Estate's counsel "has not cooperated with [the Partnership's] counsel and has been unresponsive."

The Partnership repeated its request for sanctions, noting the proposed form of order imposing sanctions it submitted earlier.

¶11 A few minutes before 4:00 p.m. on November 17, 2017, the Estate's counsel filed a motion for extension of time to file a final pretrial statement, along with various other filings, stating: (1) the filings were "following the call with the Court staff on Thursday (11/1) made from counsel's family home" and (2) noting "the untimely passing of counsel's uncle" and related issues.

¶12 With the December 4, 2017 trial fast approaching, the court set a pretrial hearing for November 20, 2017. At that hearing, the Partnership's counsel avowed that "[t]here has been no disclosure statement from the" Estate at any time. In addressing requested sanctions, the Partnership's counsel added "the conduct of the attorney here is, at a minimum, grossly negligent or reflects willful misconduct," also seeking to strike the Estate's "answer or render a default judgment." The Partnership's counsel noted the "proposed order" for sanctions, previously submitted, "explicitly said against the [Estate's] attorneys. I don't know about the [E]state." The Partnership's counsel then raised the issue of a "culprit hearing" to determine whether the sanctions should be against the Estate's counsel, the Estate or both. The Partnership's counsel concluded that, for the sanctions requested, "gross negligence[ and] willful misconduct" is "required when an attorney has failed to act."

¶13 The Estate's counsel responded that all documents had been disclosed to the Partnership, adding that "there wasn't anything that was privileged that we could even call, as I recall." He then added "we have an elderly woman in Canada whose husband was a lawyer who passed away. She had no involvement in the case. So it's been laborious and taxing to try to get information." The Estate's counsel admitted "[t]he issue with the pretrial was on me, it's not on" the Estate, citing counsel's "back issues and trying to recover and then the passing of" his family member, "but that has nothing to do with [the Estate] at all." The Estate's counsel added "I think counsel and I could probably agree to a bench trial as opposed to a jury trial" and also suggested possible resolution short of trial.

¶14 The court then summarized the recent procedural history, including the Estate's violations of various orders and rules, but did not allocate fault between the Estate's counsel and the Estate. After that summary, the court: (1) denied the Estate's motion for extension of time to make pretrial filings; (2) ordered the Estate could not offer at trial any exhibits, could not mark any exhibits for trial and could not call any

4

witnesses at trial; (3) admitted all of the Partnership's exhibits in evidence and (4) declared only the Partnership's pretrial statement would be considered. The court also prohibited the Estate from submitting any jury instructions or asking voir dire questions, issues that became moot when the trial became a bench trial. After taking a break for counsel to address whether the trial would be to a jury or the bench, the Estate's counsel indicated it would be "[a] bench trial, Your Honor," and the Partnership's counsel agreed. The court then confirmed a Monday, December 4, 2017 bench trial.

¶15        At about 3:30 p.m. on Friday, December 1, 2017, the Estate filed a motion to continue trial for 30 days. The motion stated that Ms. Stren had fallen and injured her ankle a day earlier and was unable to travel to Phoenix. The filing added, somewhat cryptically, that the Estate's counsel had authorized the motion from a hospital "while his wife remains in surgery."

¶16        The court addressed the motion to continue early on Monday, December 4, 2017, when trial was set to begin. The court, however, had not yet received a copy of the motion, which resulted in some confusion and frustration. After the court noted Ms. Stren was precluded from testifying as a sanction, the Estate's counsel avowed that the Estate "agree[d] to reimburse the travel and related expenses for the [Partnership's] witnesses that came in so that Ms. Stren can get healthy and get back down here to testify." The Estate's counsel then said he was "hopeful" that a settlement could be reached. After a recess to allow the Estate's counsel to try to contact Ms. Stren, the Estate's counsel said he had been unable to reach his client but that "we have an agreement that we've reached."

¶17        The Partnership's counsel then recounted that the Estate's counsel agreed that trial would be continued for at least 30 days and that the parties stipulated that by January 15, 2018, either: (1) "the parties will have settled" or (2) if such a settlement was not reached, the Estate "will pay the airplane tickets for Mr. Eisenberg . . ., his hotel expenses and meals for two days, and reasonable compensation for his time" to be paid in cash. If the Estate did not pay the travel expenses "in cash by January 15 because we haven't settled," then "judgment will be entered in favor of the [Partnership] and against the [Estate] for the amount sought as set forth in the [operative pleading] and the pre-trial statement." The Partnership's counsel added that the Estate's counsel agreed that the Estate had no defense to the amounts claimed for the promissory notes. The Estate's counsel confirmed that "accurately recited our discussions, and we agree"

and accepted the stipulation. Accordingly, the court rescheduled trial for late January 2018 and entered a minute entry reflecting the stipulation.

¶18 January 15, 2018 came and went with no settlement and no payment of expenses. On January 18, 2018, the Partnership submitted a proposed form of judgment, avowing that the Estate's counsel "has not contacted [the Partnership's] attorney at all since December 4, 2017 trial." This filing also avowed that the Partnership's counsel had attempted to contact the Estate's counsel "a number" of times but had "received no response of any type from the attorney for the" Estate. A few days later, the court entered the proposed form of judgment, which awarded the Partnership approximately $700,000 in damages, plus interest at ten or 4.25 percent, depending upon the claim and time period.

¶19 Post-judgment motion practice revealed that the Estate's counsel had not been in contact with his client during relevant times in December 2017 and January 2018. Of particular significance, the Estate's counsel did not inform Ms. Stren about the trial continuance or the December 4, 2017 stipulation, which she first learned about "later from a review of publicly available minute entries" after the entry of judgment. Ms. Stren asserted the Estate's counsel "was incommunicative" throughout the representation. Ultimately, it was not until February 7, 2018 that she "learned what happened," including the entry of the judgment and that the firm employing the Estate's counsel had "terminated [his] employment," adding the firm "will be reporting his conduct to the State Bar of Arizona" and recommended the Estate "obtain other Arizona counsel to protect your interests in the litigation."[1]

¶20 The law firm that had employed the Estate's counsel filed a timely motion pursuant to Arizona Rules of Civil Procedure (Rule) 59 and 60 (2020)[2] "to preserve [the Estate's] rights." That motion was denied, and the Estate retained new counsel, which filed a motion to set aside the judgment under Rule 60(b). After full briefing, the court treated this Rule 60(b) motion as timely but denied it. This court has jurisdiction over the

---

[1] Due to his conduct in this case and an extreme driving while intoxicated issue, the Estate's counsel was suspended from the practice of law by the Arizona Supreme Court for six months and a day.

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

Estate's timely appeal under Ariz. Rev. Stat. (A.R.S.) sections 12-120.21(A)(1) and 12-2101(A)(2).

## DISCUSSION

**¶21**    The Estate presses four interrelated arguments on appeal: (1) the Estate did not authorize the stipulation resulting in the entry of judgment, meaning the court should not have accepted that stipulation; (2) the Estate was entitled to Rule 60 relief; (3) the sanctions imposed were improper and (4) the Estate has, but was not permitted to raise, meritorious defenses to the Partnership's claims. This court addresses these arguments in turn.

## I.    The Stipulation, Entered Without Authority, is not Binding on the Estate.

**¶22**    The Estate claims its attorney lacked authority to enter into the stipulation on December 4, 2017 that resulted in the entry of judgment for more than $700,000 against the Estate. An attorney's actions bind a client if the attorney acts with actual or apparent authority. *Robertson v. Alling*, 237 Ariz. 345, 349 ¶ 17 (2015). An attorney has apparent authority "if the other party to the agreement 'reasonably assumes that the lawyer is authorized to do the act on the basis of the *client's* (and not the lawyer's) manifestation of such authorization.'" *Id.* (quoting Restatement (Third) of Law Governing Lawyers § 27) (emphasis added). Retention of an attorney alone, however, does not establish apparent authority. *Id.* The client's manifestation is based upon the client's assent or intention through words or conduct. *Id.*

**¶23**    The transcript from the December 4, 2017 hearing shows the Estate's counsel lacked such authority. After the recess, the court asked the Estate's counsel if he had been able to reach his client to discuss what was later offered as a stipulation that resulted in the entry of judgment against the Estate. In response, the Estate's counsel conceded "No, Your Honor." The transcript contains no evidence of a manifestation by the Estate (in contrast to the Estate's counsel) of an agreement to enter into the stipulation. In attorney disciplinary proceedings against the Estate's counsel, he later admitted that he "failed to discuss the agreement with his client prior to entering it;" he never informed the Estate of the stipulation and his agreement that the Estate lacked a valid defense regarding the promissory notes was without the knowledge or agreement of the Estate. *In the Matter of John P. Flynn*, PDJ-2018-9136, at 8-9 ¶¶ 20–21 (2019). On this record, the Estate's counsel lacked both actual and apparent authority to agree to the stipulations. *See Robertson*, 237 Ariz. at 349 ¶ 17.

¶24 The Partnership relies on *Rutledge v. Arizona Board of Regents*, 147 Ariz. 534 (App. 1985) in asserting the December 4, 2017 stipulations were binding on the Estate. *Rutledge*, however, is quite different. In *Rutledge*, while describing the scope of one cause of action during direct examination of a witness at trial, the attorneys stipulated that "grabbing face masks and pulling helmets is not an assault," wherein plaintiff's counsel stated, "[t]hat's not my claim." 147 Ariz. at 549. Finding the statement was a waiver, *Rutledge* affirmed a ruling reflecting that waiver. *Id.* at 549-50. In doing so, *Rutledge* noted reliance on the waiver by all participants at trial, something not applicable here. *Id.* at 550. Moreover, because the waiver in *Rutledge* occurred during trial, the client was present and could see the consequences of the waiver (and, presumably, confer with his attorney if he did not agree with the waiver). Finally, and again unlike this case, there was no claim in *Rutledge* that the attorney lacked authority to enter into any stipulation.

¶25 On this unique record, where the Estate's counsel expressly acknowledged he had not contacted his client before entering the stipulations, the Estate cannot properly be held to those stipulations. *See Robertson*, 237 Ariz. at 349 ¶ 17 (prohibiting "[a]n attorney without actual authority to settle a dispute" unless the other party "reasonably assumes" the lawyer is authorized to do so based on "the client's (and not the lawyer's) manifestation of such authorization") (quotation omitted). Accordingly, the stipulations agreed to by the Estate's counsel at the December 4, 2017 hearing were not binding on the Estate.

## II.    The Estate Was Entitled to Relief Under Rule 60(b)(6).

¶26 This court reviews the "denial of relief from judgment under Rule 60 for an abuse of discretion." *Woodbridge Structured Funding, LLC v. Ariz. Lottery*, 235 Ariz. 25, 29–30 ¶ 21 (App. 2014). To obtain relief from a final judgment under Rule 60(b)(6) (allowing for relief from a judgment for "any other reason justifying relief"), the movant must show: (1) "a reason for setting aside the judgment other than one of the reasons set forth in the preceding five clauses of rule 60([b]);"[3] (2) "extraordinary circumstances of hardship or injustice justifying relief;" and (3) a meritorious defense. *Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, 364 ¶ 25 (App. 2015) (quoting *Hilgeman v. Am. Mortg. Sec., Inc.*, 196 Ariz. 215, 220 ¶ 15 (App. 2000)) (as to (1) and (2)) and *Gonzalez v. Nguyen*, 243 Ariz. 531, 534 ¶ 12 (2018) (as to (3)) (citing cases). In determining whether Rule 60(b)(6) relief is appropriate,

---

[3] Although substantively identical, Rule 60(c) was re-numbered as Rule 60(b) effective January 1, 2017. Citations here are to the current Rule 60(b).

courts "must consider the totality of facts and circumstances." *Skydive Ariz.*, 238 Ariz. at 364 ¶ 25.

### A.     Rule 60(b)(1)-(5) Do Not Provide Any Basis for Relief.

**¶27**       The Estate sought relief under Rule 60(b)(1), (2), (3) and (6). The stipulations and resulting judgment were not the product of mistake or excusable neglect, because a reasonably prudent attorney would not enter into stipulations of this type without client consent. *See Aileen H. Char Life Interest v. Maricopa Cty.*, 208 Ariz. 286, 299 ¶ 40 (2004). On appeal, the Estate does not argue in earnest that newly discovered evidence under Rule 60(b)(2) applies, and the Partnership argues the Estate had no newly discovered evidence. Nor is there any argument by the Estate that the Partnership engaged in misconduct, Rule 60(b)(3),[4] or that the judgment is void or has been satisfied, released or discharged, Rule 60(b)(4), (5). Accordingly, because relief is not available under these other subparts of Rule 60(b), the first requirement for relief under Rule 60(b)(6) is met.

### B.     The Estate Has Established Extraordinary Circumstances.

**¶28**       To obtain relief under Rule 60(b)(6), the moving party also must demonstrate "extraordinary circumstances of hardship or injustice justifying relief." *Webb v. Erickson*, 134 Ariz. 182, 187 (1982). Here, stipulations entered by an attorney, who expressly disavowed having client contact to obtain authority to enter into such stipulations, resulted in a judgment for the entire amount of the plaintiff's claim sought in the complaint. Although extraordinary circumstances of hardship or injustice cannot comprehensively be defined, it is difficult to imagine a situation more extraordinary than what happened here. Moreover, after the Estate retained new counsel, it acted promptly in seeking to set aside the resulting judgment. Given these unique circumstances, the Estate has established extraordinary circumstances of hardship or injustice, which justify relief. *See Skydrive Ariz., Inc.*, 238 at 364 ¶ 27 (finding extraordinary circumstances under Rule 60(b)(6) when defendant took action so that summary judgment would be stayed while he was on active duty but then, after a change in judge, the court granted summary judgment and entered judgment against him).

---

[4] At oral argument on appeal, however, the Partnership conceded that it had access to the promissory notes but had not disclosed them before the entry of judgment.

### C. Because the Estate was Not Properly Sanctioned, the Court Could Not Find It Lacked a Meritorious Defense.

¶29 Finally, the Estate had the burden to demonstrate a meritorious defense. *Gonzalez*, 243 Ariz. at 534 ¶ 12. "This burden is 'minimal,'" requiring only some facts that, if proven at trial, would constitute a defense. *Id.* (citations omitted). The evidence to be considered in determining whether the movant has met this burden need not be extraneous to the record. *Id.* at 534 ¶ 13. Whether the Estate could show a meritorious defense turns on whether the sanctions imposed were proper.

¶30 The court found the Estate could not establish a meritorious defense because it had been precluded from calling any witnesses or submitting evidence as a sanction. Specifically, the court held:

> Defendant failed to disclose her defenses, any witnesses or a pretrial statement in preparation for trial. This failure led to the Court precluding Defendant from calling any witnesses or submitting any exhibits at trial. To the extent that Defendant believes that she was prevented from presenting her "meritorious defense" as outlined extensively in her pleadings, that failure was not due to Plaintiff's fraud, misrepresentation or misconduct, but on her own actions.

These failures are not genuinely disputed and clearly warrant sanctions. What the record does not show, however, is whether the sanctionable conduct was attributable to the Estate's counsel, the Estate or both.

¶31 "[W]here the party is not guilty of misconduct in the discovery process, he should not suffer default as the result of his counsel's guilty conduct." *Lenze v. Synthese, Ltd.*, 160 Ariz. 302, 305 (App. 1989). A corollary to this is that "[w]here there is a question as to whether the party is guilty or innocent of misconduct, a hearing is required to settle the question." *Id.* at 305 (citing *Robinson v. Higuera*, 157 Ariz. 622 (App.1988); *Birds Int'l Corp. v. Ariz. Maintenance Co.*, 135 Ariz. 545 (App. 1983)); *accord Treadaway v. Meador*, 103 Ariz. 83, 84 (1968) (noting superior court "clearly abused its discretion in failing to set aside the judgment . . . upon determining the true state of facts . . . they had engaged an attorney and had fully attempted to comply with the court's directions"). "The requirement that a court conduct a 'culprit hearing' is aimed at protecting

a party from dispositive sanctions when the fault lies only with counsel. Such hearings present an opportunity for the client to reveal to the court its lack of involvement in sanctionable conduct." *Lund v. Superior Court*, 227 Ariz. 572, 581 ¶ 34 (App. 2011) (citing cases); *accord Marquez v. Ortega*, 231 Ariz. 437, 444 ¶ 26 (App. 2013).

**¶32** On appeal, the Partnership argues that *Marquez* requires a "culprit hearing" *only* when the sanctions imposed are "tantamount to [a] dismissal" and that the sanctions here do not meet that standard. Not so. Although the Partnership relies on one sentence of dicta in *Marquez*, the standard set forth in that case is: "Whether a hearing is necessary depends on '(1) the circumstances in general; (2) the type and severity of the sanctions under consideration; and (3) the judge's participation in the proceedings, knowledge of the facts, and need for further inquiry.'" 231 Ariz. at 444 ¶ 26 (quoting *Lund*, 227 Ariz. at 582 ¶ 37).

**¶33** As noted twenty years before *Marquez*, "[t]he heavier the sanction contemplated, the more deliberate the process that is due and the more thorough the findings that should be made." *Montgomery Ward & Co., Inc. v. Superior Court In and For Cty. of Maricopa*, 176 Ariz. 619, 622 (App. 1993). Although a culprit hearing may not be required when the record clearly shows responsibility for sanctionable conduct, "an evidentiary hearing may often be necessary to determine whether responsibility for obstructing discovery lies with the party or with his counsel." *Hammoudeh v. Jada*, 222 Ariz. 570, 572 ¶ 7 (App. 2009) (citing *Lenze*, 160 Ariz. at 306).

**¶34** As applied, the record suggests that the misconduct was attributable solely to the Estate's counsel. In the November 20, 2017 hearing, the Estate's counsel admitted that the issues with the pretrial findings were his alone. Moreover, to the extent the record could be read as suggesting something other than misconduct solely by the Estate's counsel, the Partnership's counsel at this same hearing raised the issue of a culprit hearing to determine whether the sanctions should be against the Estate's counsel, the Estate or both. On this record, a culprit hearing was necessary. *See Marquez*, 231 Ariz. at 444 ¶ 26. Because none was held, the sanctions imposed — all of which were against the Estate, not the Estate's counsel — cannot stand.

**¶35** Because the sanctions must be vacated, the finding that the Estate could not present a meritorious defense as required for Rule 60(b)(6) similarly fails. Depending upon the outcome of the culprit hearing on remand, the Estate may be able to show admissible evidence supporting

one or more meritorious defenses. Whether the Estate can do so, however, will turn on the results of the culprit hearing.

## CONCLUSION

**¶36** Because the stipulation resulting in the entry of judgment was not binding on the Estate, the superior court's denial of the motion to set aside the judgment pursuant to Rule 60(b)(6) is reversed. On remand, the superior court is directed to conduct a culprit hearing to determine the appropriate sanctions to be imposed on the Estate's counsel, the Estate or both. The outcome of that hearing, in turn, will determine how the case should proceed going forward.

**¶37** The Estate is awarded its taxable costs on appeal, contingent upon its compliance with Arizona Rules of Civil Appellate Procedure 21. The Estate's request for attorneys' fees on appeal pursuant to A.R.S. §§ 12-349 and -350 is denied. The parties' competing requests for attorneys' fees on appeal pursuant to A.R.S. § 12-341.01 are denied without prejudice to their reassertion following remand and the conclusion of the culprit hearing.



AMY M. WOOD • Clerk of the Court
FILED:  AA